The PEOPLE of the State of Colorado,
In the Interest of E.W. and R.W.,
Petitioner–Appellee,

and Concerning,

R.S., Respondent–Appellant.

No. 87CA1567. ·

Colorado Court of Appeals,
Div. III.

May 18, 1989.

Rehearing Denied June 22, 1989.

Certiorari Denied Sept. 5, 1989.

Charles P. Siner, County Atty., and Leah L. Audin, Asst. County Atty., Brighton, for petitioner-appellee.

Carpenter & Johnson, P.C., Craig D. Johnson, Wheat Ridge, for respondent-appellant.

Shari F. Shink, Denver, guardian ad litem.

JONES, Judge.

Father, R.S., appeals from a final judgment of the juvenile court terminating his parent-child relationship with his son, R.W. We affirm.

R.S. is the natural father of R.W. and the non-adoptive stepfather of another boy, E.W. In late 1985 the Department of Social Services (Department) filed a petition in dependency and neglect alleging that R.S. had sexually abused both R.W. and E.W. After finding the children dependent and neglected based on the admissions of R.S. and of L.S., their mother, the trial court adopted a treatment plan.

The treatment plan for R.S. required him to complete a psychiatric or psychological evaluation to determine his needs for therapy. He was ordered to enter a caseworker-approved program designed for sexual offenders. R.S. was also to sign releases for both the evaluation and therapy sessions, allowing caseworkers to obtain information needed to monitor his compliance with the treatment plan and analyze the plan's ultimate success.

While the dependency and neglect action was pending, R.S. was being investigated by the police department for possible criminal charges related to the alleged sexual abuse of R.W. and E.W. R.S. objected to signing the releases on the ground that his statements made while participating in the treatment plan could be used against him

in criminal proceedings. The trial court responded by entering a protective order simultaneously with the treatment plan order.

The protective order joined the Adams County District Attorney's Office and the Thornton Police Department as parties to this action. It ordered those parties not to make "any attempt to question any employees of the Adams County Department of Social Services concerning any statements given by R.S. in the course of the treatment plan ... or to use any such statement in any civil or criminal proceeding." This order was appealed to the Colorado Supreme Court by the Adams County county attorney.

R.S. pled guilty to the sexual abuse charges, and was sentenced to the department of corrections. The record does not show that any appeal from the criminal proceedings was taken. Subsequently, the Colorado Supreme Court upheld the protective order. *See People v. District Court*, 731 P.2d 652 (Colo.1987).

The Department then sought, and obtained, a judgment terminating the parent-child relationship of R.S. as to his son, R.W. This appeal followed.

Throughout the pendency of the dependency and neglect and criminal proceedings, R.S. argued that compliance with the treatment plan would violate his privilege against self-incrimination. He consistently refused to sign any releases or otherwise cooperate with the Department in complying with the treatment plan.

## I.

■ R.S.'s principal contention is that the judgment terminating the parent-child relationship should be reversed because his Fifth Amendment privilege against self-incrimination was violated. We disagree.

The Fifth Amendment privilege against self-incrimination allows any witness or party in a civil, criminal, or administrative hearing to refuse to answer a question if he believes the answer may provide evidence of a crime he has committed. *Denver Policemen's Protective Ass'n v. Li-*

*chtenstein*, 660 F.2d 432 (10th Cir.1981). *See also Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). *Cf. Asplin v. Mueller*, 687 P.2d 1329 (Colo.App.1984) (party in civil proceeding may be called for testimony even if he intends to claim Fifth Amendment privilege, and trier of fact may draw reasonable inferences from his refusal to answer questions on claim of privilege against self-incrimination). However, it is constitutionally permissible for a state to compel a witness to testify by substituting a grant of immunity co-extensive with the protection afforded by the Fifth Amendment. *See Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *People ex rel. MacFarlane v. Sari*, 196 Colo. 235, 585 P.2d 591 (1978); *People ex rel. Smith v. Jordan*, 689 P.2d 1172 (Colo.App.1984).

To be co-extensive, the grant of immunity must leave the witness and the state "in substantially the same position as if the witness had claimed the privilege in the absence of a state grant of immunity." *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *People ex rel. MacFarlane v. Sari*, *supra*.

Here, any statements by R.S. for purposes of evaluation and therapy were protected by the court's protective order, which provided immunity to him comparable to the assertion of his Fifth Amendment rights. Thus, his failure to comply with the treatment plan may not be excused by reference to the Fifth Amendment.

Hence, R.S. had no proper basis upon which to refuse to comply with the treatment plan, and that refusal justifies the court's termination of his parental rights.

## II.

■ R.S. also contends that the trial court erred in allowing the *ex parte*, post-trial submission of the death certificate of E.W.'s natural father. We find no reversible error.

The death certificate was submitted to corroborate trial testimony that E.W.'s nat-

ural father was dead. Since R.S. did not claim to be the child's natural or adoptive father, he had no substantive rights which could be affected by the court's determination of the status of E.W.'s natural father. Therefore, there was no prejudice to defendant, and no reversible error, in the admission of the death certificate following the trial.

The judgment is affirmed.

TURSI and CRISWELL, JJ., concur.