**The PEOPLE of the State of Colorado, Petitioner–Appellant,**

**In the Interest of A.D.G., a Juvenile, Appellee,**

**and Concerning K.G. and G.G., Respondents.**

**No. 93CA1009.**

Colorado Court of Appeals, Division IV.

Aug. 11, 1994.

Rehearing Denied Sept. 15, 1994.

Certiorari Denied June 5, 1995.

A. William Ritter, Jr., Dist. Atty., Henry R. Reeve, Deputy Dist. Atty., Denver, for petitioner-appellant.

Diana M. Richett, Lakewood, for appellee.

Opinion by Judge BRIGGS.

The People appeal rulings of the juvenile court (1) refusing to waive jurisdiction over A.D.G., a juvenile, for lack of "clear and convincing" evidence; (2) refusing to compel a psychological examination of the juvenile; and (3) holding that the juvenile's refusal to be psychologically examined could not be considered as part of the transfer decision. We disapprove in part and approve in part.

The juvenile was charged in a delinquency petition with manslaughter and prohibited use of a weapon. The People requested that the juvenile court transfer the case to district court pursuant to § 19–2–806, C.R.S. (1993 Cum.Supp.). As part of the transfer request, the People sought a court-ordered psychological evaluation of the juvenile.

In response, the juvenile contended that the transfer statute was unconstitutional in failing to give notice as to which party had the burden of proof or to define the burden of proof. In the alternative, the juvenile argued that transfer required proof by clear and convincing evidence. The juvenile also objected to the request for a psychological evaluation on the grounds that it violated his right against self-incrimination.

The juvenile court found the transfer statute constitutional, but concluded that "procedural due process requires a standard of proof of clear and convincing evidence." The court further concluded that it could not order a psychological examination over the juvenile's objection.

Following a hearing on the motion to waive jurisdiction, the court denied the People's request to transfer, finding that they had failed to prove by clear and convincing evidence that it would be contrary to the interests of the public for the juvenile court to retain jurisdiction. The juvenile then entered a plea of guilty to both charges and was adjudged a delinquent child. He was sentenced to the Department of Institutions for a determinate period of two years. This appeal by the People followed.

## I.

■ The People first contend that the juvenile court erred in concluding that proce-

dural due process requires "a standard of proof of clear and convincing evidence" for a juvenile transfer. We agree.

### A.

The Colorado Children's Code, § 19–1–101, et seq., C.R.S. (1993 Cum.Supp.), contains specific provisions governing the jurisdiction and transfer of juveniles. With few exceptions, juvenile courts have initial jurisdiction over any juvenile committing a delinquent act. Section 19–1–104, C.R.S. (1993 Cum. Supp.). However, when the juvenile is fourteen or older and is alleged to have committed a delinquent act that would constitute a felony, the district attorney may request that the juvenile court waive its jurisdiction over the juvenile and transfer jurisdiction to the district court for trial as an adult. Section 19–2–806, C.R.S. (1993 Cum.Supp.).

The juvenile court must then conduct an investigation and hearing to determine whether there is probable cause to believe that the juvenile committed the delinquent act for which waiver is sought and, if so, whether the interests of the juvenile or of the community would be better served by the juvenile court waiving its jurisdiction. Section 19–2–806(2), C.R.S. (1993 Cum.Supp.).

In considering whether to waive jurisdiction, the juvenile court must consider thirteen factors: (1) the seriousness of the offense and whether the protection of the community requires isolation of the juvenile beyond that afforded by juvenile facilities; (2) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner; (3) whether the alleged offense was against persons or property, greater weight being given to offenses against persons; (4) the maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living; (5) the record and previous history of the juvenile; (6) the likelihood of rehabilitation of the juvenile by use of facilities available to the juvenile court; (7) the interests of the community in the imposition of a punishment commensurate with the gravity of the offense; (8) the impact of the offense on the victim; (9) whether the juvenile was

twice previously adjudicated a juvenile delinquent for delinquent acts which constitute felonies; (10) whether the juvenile was previously adjudicated a juvenile delinquent for a delinquent act which constitutes a crime of violence; (11) whether the juvenile was previously committed to the Department of Institutions following an adjudication for a delinquent act which constitutes a felony; (12) whether the juvenile was sixteen years of age or older at the time of the offense and the present act constitutes a crime of violence; and (13) whether the juvenile is sixteen years of age or older at the time of the offense and has been twice previously adjudicated a juvenile delinquent for delinquent acts against property which constitute felonies. Section 19–2–806(3)(b), C.R.S. (1993 Cum.Supp.).

The weight to be given to each of these factors is discretionary with the court, except that a record of two or more previously sustained petitions for delinquent acts constituting felonies establishes prima facie that to retain jurisdiction in juvenile court would be contrary to the best interests of the juvenile or of the community. Section 19–2–806(3)(c), C.R.S. (1993 Cum.Supp.). The insufficiency of evidence pertaining to any one or more of the facts is not in and of itself determinative of the issue of waiver of juvenile court jurisdiction. Section 19–2–806(3)(d), C.R.S. (1993 Cum.Supp.).

The court may enter an order certifying the juvenile to be held for criminal proceedings in the district court "if, after investigation and a hearing, the juvenile court finds it would be contrary to the interests of the juvenile or of the public to retain jurisdiction." Section 19–2–806(1), C.R.S. (1993 Cum.Supp.).

### B.

It is not uncommon to refer, as the parties have here, to standards of evidentiary proof in discussing the burden of proof in transfer proceedings. *See State in Interest of R.W.*, 717 P.2d 258 (Utah 1986); *J.S.A. v. State*, 615 So.2d 1288 (Ala.Cr.App.1993). However, in phrasing the question as whether the standard of proof in a transfer proceeding is "clear and convincing evidence" there can be some confusion.

■ "Burden of proof" means the obligation to establish the truth of a proposition. *See CJI Civ.3d* 3:1 (1988 Supp.); 29 Am. Jur.2d *Evidence* § 123 (1967). That proposition may or may not involve resolution of a disputed factual issue.

If the proposition to be proved is a disputed issue of fact, then reference to "a preponderance of the evidence" or to "clear and convincing evidence" to establish that fact is appropriate. In this sense, disputed issues of fact may include both evidentiary and ultimate facts. For example, in a transfer hearing, disputed issues of fact may include the "prior history" and the "maturity" of the juvenile.

However, in making a transfer decision, the juvenile court does not merely make findings of fact relevant to the statutory factors required to be considered. It must also weigh the factors to which the evidence is relevant and thus determine the truth of the proposition that waiver of juvenile court jurisdiction would be in the best interests of the juvenile or of the public.

In this second step of the process, it may still be correct to state that the proposition in question must be established by some "standard of proof." However, the court will have resolved any underlying disputed issues of fact before weighing the applicable factors. The decision whether to transfer, based on the weighing of applicable factors, is thus more analogous to a sentencing decision than a finding of guilt. *Cf. Santosky v. Kramer*, 455 U.S. 745, 748, 102 S.Ct. 1388, 1392, 71 L.Ed.2d 599, 603 (1982) ("At the *factfinding stage* the State must prove that the child has been 'permanently neglected.' ... The Family Court judge *then* determines at a subsequent dispositional hearing what placement would serve the child's best interests." (emphasis added)).

It may therefore be confusing to speak of an evidentiary burden of proof in this phase of the process. The juvenile's contention can instead be rephrased as a two-part argument: in the process of finding facts, the burden of proving evidentiary and ultimate facts in support of transfer must be by clear and convincing evidence; in the process of

weighing the pertinent statutory factors after any factual disputes have been resolved, the factors supporting transfer must clearly and convincingly outweigh those supporting retention of juvenile court jurisdiction. In discussing the requisite standard of proof we will be referring to both aspects of the argument.

### C.

Some states have adopted statutes requiring a "clear and convincing" standard of proof in juvenile transfer hearings. *See, e.g., State in Interest of R.W., supra. See generally* IJA/ABA Juvenile Justice Standards Project, *Standards Relating to Transfer Between Courts* (1980). However, our General Assembly has not chosen to impose any heightened standard of proof on the juvenile court in deciding whether to certify a juvenile for criminal proceedings in district court.

█ With limited exceptions not here applicable, transfer under our statutory scheme is left to the juvenile court's discretion. *See People v. District Court,* 191 Colo. 28, 549 P.2d 1317 (1976); *cf. State v. Thieszen,* 232 Neb. 952, 442 N.W.2d 887 (1989). That discretion includes choosing the weight to be given to evidence relevant to the factors to be considered in addressing a request for transfer based on less serious felonies, as well as the weighing of the factors themselves. *See Buckmiller v. Safeway Stores, Inc.,* 727 P.2d 1112 (Colo.1986). We find no violation of due process in this statutory scheme.

The United States Supreme Court addressed a due process challenge to transfer proceedings in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The juvenile code in question provided for transfer after "full investigation," but did not require a hearing and provided no standards to govern the decision.

The Supreme Court concluded that due process required at least a hearing, assistance of counsel, and a statement of reasons. At the same time, the Court recognized that a statutory scheme could satisfy the basic requirements of due process while giving the juvenile court "a substantial degree of discre-tion as to the factual considerations to be evaluated, the weight to be given them, and the conclusion to be reached." *Kent v. United States, supra,* 383 U.S. at 553, 86 S.Ct. at 1053, 16 L.Ed.2d at 93.

The Supreme Court later emphasized the limited scope of that holding by stating:

> In *Kent v. United States* ... the Court held that hearings under the statute there involved 'must measure up to the essentials of due process and fair treatment.' However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.

*Breed v. Jones,* 421 U.S. 519, 537–38, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346, 360 (1975); *see In re Appeal In Maricopa County,* 138 Ariz. 287, 674 P.2d 841 (1983); *cf. People v. Moseley,* 193 Colo. 256, 566 P.2d 331 (1977) (former version of Children's Code, containing fewer factors applicable to transfer decision, provided adequate standards to give fair notice).

The juvenile argues that the Supreme Court's later holding in *Santosky v. Kramer, supra,* which involved proceedings to terminate parental rights, mandates a burden of proof of clear and convincing evidence in transfer proceedings. However, the rights and interests there involved are distinguishable and do not compel such a conclusion here.

The Supreme Court in *Santosky* first observed that the function of a standard of proof is to instruct the factfinder concerning the degree of confidence our society thinks should be required for factual conclusions in a particular type of adjudication. The standard applied reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants.

Recognizing that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment, the Court in *Santosky* concluded that a parent's interest in accuracy was a commanding one. Further, the

official action in severing parental rights was essentially irreversible. Accordingly, it concluded that a standard allocating the risk of error nearly equally would not properly reflect the severity of destroying the parents' relationship with their natural children. Thus, due process required a standard of at least clear and convincing evidence.

Though the consequences of transfer can be substantial, there is no constitutional right, fundamental or otherwise, to be tried as a juvenile. And, if transferred to district court, the juvenile retains all the constitutional rights of an adult. In contrast, if jurisdiction is retained, the juvenile is adjudicated to have committed a delinquent act, and rehabilitation fails, the risk to the public of being subjected to further criminal acts can be substantial. Thus, we conclude that the risk to the public of an erroneous decision to retain juvenile court jurisdiction can be equal to or greater than the risk to the juvenile of being erroneously transferred. *See In re Seven Minors,* 99 Nev. 427, 664 P.2d 947, 951 (1983) ("While juvenile courts must balance these sometimes conflicting interests, the court's duty to the public is paramount.").

Therefore, while we recognize the concerns of the juvenile court, we are not persuaded that a juvenile's constitutional right to due process requires that the evidence supporting transfer be clear and convincing. Nor is it necessary that the factors in support of transfer clearly and convincingly outweigh the factors in support of retaining juvenile court jurisdiction.

Because the juvenile has been adjudicated a delinquent, he may not be once again placed in jeopardy. *Breed v. Jones, supra.* As a result, we cannot remand for reconsideration of the decision not to transfer. Our holding is therefore limited to disapproval of the juvenile court's ruling that due process requires a standard of proof by clear and convincing evidence in a juvenile transfer proceeding.

## II.

■ The People next challenge the juvenile court's refusal to order a psychological evaluation of the juvenile for the purpose of a transfer hearing. The court recognized its general statutory authority to order such an evaluation pursuant to § 19–1–104(3)(a), C.R.S. (1993 Cum.Supp.). However, it concluded that the juvenile could not be compelled to submit to an evaluation because of his Fifth Amendment right against self-incrimination. We find no error in the ruling.

In *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the United States Supreme Court determined that the privilege against self-incrimination applies to juvenile proceedings to determine delinquency. The Court reasoned that the availability of the privilege did not turn upon the type of proceeding in which the protection is invoked, but upon the nature of the statement or admission and the exposure which it invited. Commitment as a juvenile is a deprivation of liberty, and no person may be compelled to be a witness against himself when threatened with deprivation of his liberty.

Using the same reasoning, the Supreme Court in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) determined that the Fifth Amendment's protection against self-incrimination is not limited to proceedings to determine guilt. There, the trial court had ordered a psychiatric evaluation for the "neutral" purpose of determining the defendant's competence to stand trial. However, the State sought to introduce the results of the evaluation in the sentencing phase, with an objective that "was plainly adverse" to the defendant. *Estelle v. Smith, supra,* 451 U.S. at 465, 101 S.Ct. at 1874, 68 L.Ed.2d at 370. The Court held that criminal defendants who neither initiate psychiatric evaluations nor attempt to introduce any psychiatric evidence may not be compelled to respond to a psychiatrist if their statements can be used against them at a capital sentencing proceeding.

■ Unlike the "neutral" purpose of a psychiatric evaluation to determine competence to stand trial, the purpose of a psychological evaluation of a juvenile for a transfer hearing is "plainly adverse" to the juvenile. *See R.H. v. State,* 777 P.2d 204 (Alaska App. 1989). Further, in a transfer proceeding, a juvenile risks not only loss of juvenile reha-

bilitative treatment and other significant educational opportunities that might otherwise have been obtained, but also application of adult penalties. The United States Supreme Court has observed that the result of the transfer hearing is of "tremendous consequences." *Kent v. United States, supra,* 383 U.S. at 554, 86 S.Ct. at 1053, 16 L.Ed.2d at 93.

Because of the nature of the proceeding and the statements sought to be obtained, and because of the exposure to the risk of a substantial increase in the deprivation of liberty, we conclude that a juvenile who objects cannot be ordered to undergo a psychological evaluation for the purpose of a transfer hearing. *See R.H. v. State, supra; but cf. In re Appeal in Pima County,* 139 Ariz. 446, 679 P.2d 92 (App.1984). The juvenile court therefore did not err in refusing to do so.

### III.

■ Finally, the People assert that the juvenile court erred in ruling that, if a juvenile refuses to participate in a psychological evaluation ordered by the court as part of its investigation in a transfer hearing, such refusal cannot be used against him to prove that he is not amenable to treatment as a juvenile. We again disagree.

■ A defendant may not be penalized for the exercise of his Fifth Amendment right to remain silent. *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); *People v. Key,* 185 Colo. 72, 522 P.2d 719 (1974). *See also Estelle v. Smith, supra.* It would impermissibly penalize the exercise of that right if the transfer decision were influenced by the juvenile's refusal to submit to a psychological evaluation. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) *People v. Reyher,* 728 P.2d 333 (Colo.App.1986); *In re Appeal in Pima County, supra.* Therefore, the juvenile court ruling was correct.

The ruling of the juvenile court requiring clear and convincing proof in a juvenile transfer hearing is disapproved. The rulings of the court refusing to require a juvenile to undergo a psychological examination for purposes of a transfer hearing and barring the use of a juvenile's refusal to undergo such an examination in the transfer hearing are approved.

HUME and DAVIDSON, JJ., concur.