275 P.3d 762 (2012)
The PEOPLE of the State of Colorado, Petitioner-Appellant,
In the Interest of C.Y., Juvenile-Appellee.
No. 11CA0604.
Colorado Court of Appeals, Div. VII.
February 16, 2012.
*764 Peter Hautzinger, District Attorney, Curtis L. Fleming, Deputy District Attorney, Grand Junction, Colorado, for Petitioner-Appellant.
Douglas K. Wilson, Colorado State Public Defender, Mark A. Backstrom, Deputy State Public Defender, Grand Junction, Colorado, for Respondent-Appellee.
Opinion by Judge BERNARD.
¶ 1 This case involves C.Y., a boy charged with having committed sex-related delinquent acts. A magistrate found that he was incompetent to stand trial and that he could not be restored to competency. As a result, the law allowed the magistrate to fashion a management plan. As part of that plan, the magistrate ordered the boy to undergo a psychosexual evaluation. The evaluation's purpose was to determine whether he presented a risk to the community's safety and what steps should be taken to ensure his safety and future development.
¶ 2 On review, the district court decided that the boy should not be required to undergo the psychosexual evaluation as part of the management plan. The prosecution appeals this decision.
¶ 3 We must resolve two issues. First, did the magistrate's order requiring this evaluation violate the boy's right to be free from compelled self-incrimination? Second, did this order violate his due process rights? We answer the first question "no" because a statute bars the prosecution from using any statements the boy makes during the evaluation in subsequent criminal proceedings. Our answer to the second question has two parts: (1) the magistrate's order did not unconstitutionally undercut the presumption of innocence; and (2) we will not address the boy's argument that results of the psychosexual evaluation may be used to further limit his liberty because his argument is premature.
¶ 4 As a result of these conclusions, we reverse the district court's order, and we remand to the district court to reinstate the psychosexual evaluation as part of the management plan.

I. Background
¶ 5 The boy suffers from significant mental and developmental disorders, including a serious brain injury, due in part to complications at his birth. He lives with his mother and sister, and he receives extensive therapy and special education for his cognitive disabilities.
¶ 6 In January 2010, he was eleven years old. His nine-year-old sister reported to the police that he had grabbed her "butt" and "privates." His sister claimed that he had touched her in this way many times over a four-month period.
¶ 7 The boy was charged with having committed three delinquent acts that would constitute the adult offenses of aggravated incest, unlawful sexual contact, and assault in *765 the third degree. He was released on bond to live at home with his mother in order to continue his therapy. His sister was initially removed from the home. But after a safety plan was worked out, the Mesa County Department of Human Services allowed her to return.
¶ 8 The magistrate handling the case granted the request of the boy's lawyer to have him evaluated to determine whether he was competent to stand trial. The competency evaluator stated that the boy was incompetent to proceed and that "he may never attain competency."
¶ 9 Neither the prosecution nor the boy's attorney contested the results of the competency evaluation. The magistrate then found that the boy was "incompetent to proceed to adjudication in this matter and cannot be restored to competency." The magistrate then set a hearing to work out the details of a management plan covering the boy's treatment and placement.
¶ 10 A plan was produced, and it was discussed at the hearing. The prosecution and the defense agreed on all of it except for one part. That part required the boy to undergo a psychosexual evaluation.
¶ 11 A licensed clinical social worker, who had never met the boy, testified about what the psychosexual evaluation would consist of, how it would be conducted, and its usefulness. Because she was aware of the boy's disabilities, she recommended a modified version that would be more appropriate for him. She added that "[t]he evaluation was not intended to be used to determine guilt or innocence in any way." Rather, it provided a "sexual offense specific focus" to determine what the boy's appropriate "structure and supervision" should be.
¶ 12 Several therapists and teachers who worked with the boy testified about his condition and prognosis. They were concerned that he would not understand the evaluation or that he would not be able to respond appropriately to questions asked during it. Based on this testimony, the boy's attorney argued that the evaluation would be inappropriate because of his cognitive limitations.
¶ 13 The magistrate decided that the boy should undergo the psychosexual evaluation as part of the management plan to determine what risk he posed to the community and for "his own personal safety and his own personal development in the future."
¶ 14 The boy sought the district court's review of the magistrate's decision to include the psychosexual evaluation in the management plan. See § 19-1-108(5.5), C.R.S.2011 (parameters of district court review; "[a] petition for review shall be a prerequisite before an appeal may be filed with the Colorado court of appeals"); People v. S.X.G., 269 P.3d 735, 739 (Colo.2012) (if statute allows the prosecution to appeal any decision of the trial court on a question of law, then "the magistrate rules cannot be construed to bar the prosecution from seeking statutorily authorized interlocutory review of a suppression order simply because that suppression order was entered by a juvenile court magistrate instead of a juvenile court judge"). The district court agreed with the boy's argument that the inclusion of the psychosexual evaluation in the treatment plan was legal error. In doing so, it observed that it was "unaware of any authority to require a [juvenile in a delinquency case] to participate in such an evaluation [unless he or she] consent[ed] to participate in such an evaluation."
¶ 15 The court recognized that section 19-2-1303(3)(b)(V), C.R.S.2011, gives the magistrate discretion to include "[a]ny other remedy deemed appropriate by the [magistrate]" in a management plan. However, the court concluded that the order to undergo the psychosexual evaluation was outside of the parameters of that discretion.

II. Jurisdiction
¶ 16 As a preliminary matter, we conclude that we have jurisdiction to resolve this appeal. There is no disagreement that the issue before uswhether the magistrate's order requiring the boy to submit to a psychosexual evaluation violates his right to be free from compelled self-incriminationis a question of law. Rather, the disagreement concerns whether the magistrate's order was final for appellate purposes.
*766 ¶ 17 A magistrate's order must be final before a district court judge has the authority to review it. C.R.M. 7(a)(3); People in Interest of M.A.M., 167 P.3d 169, 173 (Colo. App.2007). Likewise, subject to a few exceptions, the court of appeals only reviews final orders. C.A.R. 1(a)(1); see also People v. Kazadi, ___ P.3d ___, ___, 2011 WL 724754 (Colo.App.2011)(Taubman, J., concurring in part and dissenting in part) ("certain nonfinal orders are appealable" (listing cases)).
¶ 18 In juvenile delinquency cases, the prosecution has the same right to appeal questions of law as it has in criminal cases. §§ 19-1-109(2)(a), 19-2-903(2), C.R.S.2011. The prosecution's right to appeal in criminal cases is found in section 16-12-102, C.R.S. 2011, which authorizes the prosecution to appeal trial court decisions on issues of law in cases in which final judgments have been entered. People v. Guatney, 214 P.3d 1049, 1050-51 (Colo.2009) (prosecution appeals are "subject to the final judgment requirement of C.A.R. 1").
¶ 19 A final judgment is one that "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." Id. at 1051. This reasoning applies to delinquency proceedings. People in Interest of H.R., 883 P.2d 619, 620 (Colo.App.1994); see D.H. v. People, 192 Colo. 542, 544, 561 P.2d 5, 6 (1977) (order transferring delinquency case from juvenile court to district court was not a final judgment because it was interlocutory and did not completely determine the parties' rights).
¶ 20 Generally, orders in criminal cases finding that defendants are incompetent to stand trial are not final. See Rupert v. People, 156 Colo. 277, 279, 398 P.2d 434, 434 (1965). Such orders do not normally terminate the proceedings. Rather, they require that the proceedings be held in abeyance until the defendants' competency is restored. If their competency is restored, the criminal proceedings recommence. §§ 16-8.5-102, 16-8.5-113, 16-8.5-114, C.R.S.2011; People v. Harris, 914 P.2d 425, 429 (Colo. App.1995).
¶ 21 Similarly, as a general rule, when juveniles are found incompetent to stand trial, they cannot be tried or sentenced, and the proceedings against them are held in abeyance. § 19-2-1301(2), 19-2-1303(1), C.R.S. 2011. When they are restored to competency, their delinquency cases resume. §§ 19-2-1304, 19-2-1305(1), C.R.S.2011.
¶ 22 However, section 19-2-1303(3)(a), C.R.S.2011, sets forth what courts must do when, in cases like this one, they find that juveniles are not only incompetent to stand trial, but also that they cannot be restored to competency. Upon such a finding,
the court shall determine whether a management plan for the juvenile is necessary, taking into account the public safety and the best interests of the juvenile. If the court determines a management plan is necessary, the court shall develop the management plan after ordering that the juvenile be placed in the least-restrictive environment.... The management plan shall, at a minimum, address treatment for the juvenile, identify the party or parties responsible for the juvenile, and specify appropriate behavior management tools, if they are not otherwise part of the juvenile's treatment.
Id.
¶ 23 Section 19-2-1303(3)(b), C.R.S.2011, lists several components that may be included in a management plan, including placement options and informed supervision models, ending with "[a]ny other remedy deemed appropriate by the court." § 19-2-1303(3)(b)(V). Section 19-2-1303(3)(c), C.R.S.2011, places limits on the court's jurisdiction over juveniles who have been found permanently incompetent. It states:
If the charges are not dismissed earlier by the district attorney, the charges against a juvenile found to be incompetent and unrestorable shall be dismissed no later than the maximum possible sentence for the original offense after the date of the court's finding of incompetent and unrestorable, unless the court makes specific findings of good cause to retain jurisdiction. However, in no case shall the juvenile *767 court's jurisdiction extend beyond the juvenile's twenty-first birthday.
¶ 24 Analyzing this statutory scheme, we conclude that the finding that a juvenile cannot be restored to competency is a final, appealable order. We rely on the following two-part reasoning.
¶ 25 First, the word "can" means "to be physically or mentally able to." Webster's Third New International Dictionary 323 (2002). The word "not" means "in no manner or degree: in no way: NOWISE." Id. at 1543. The word "restore" means "to give back (as something lost or taken away): make restitution of: RETURN." Id. at 1936.
¶ 26 A finding that a juvenile "cannot" be restored to competency means that the juvenile has, in no manner, degree, or way, the mental ability to be returned to competency. Thus, the juvenile will never be brought to trial on the charges in that delinquency case: the case is over. Compare § 19-2-1303(3)(c) (when charges must be dismissed after a court finds that a juvenile cannot be restored to competency), with § 16-8.5-116(2), C.R.S. 2011 (procedures to be followed when there is a "substantial probability" that a defendant in a criminal case will not be "restored to competency within the foreseeable future," which may include the termination of criminal proceedings).
¶ 27 In this limited context, a finding that a juvenile cannot be restored to competency is analogous to a finding that a defendant in a criminal case is not guilty by reason of insanity. Compare People v. Zapotocky, 869 P.2d 1234, 1240 (Colo.1994)("[A] state cannot continue to confine the defendant under its criminal commitment statutes if it is unlikely that the defendant ever will attain competency. When the determination is made that there is no substantial probability that the defendant will be restored to competency, `the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.'" (quoting Jackson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972))), with Coolbroth v. District Court, 766 P.2d 670, 673 (Colo.1988) ("a verdict of not guilty by reason of insanity is an adjudication of non-guilt on the criminal offense charged against the defendant," and the defendant is then "committed to the custody of the department of institutions until such time as he is found to be eligible for release").
¶ 28 A finding that a defendant is not guilty by reason of insanity is a "final adjudication on the merits." People v. Galves, 955 P.2d 582, 583-84 (Colo.App.1997); see also Jacobs v. Carmel, 869 P.2d 211, 214-15 (Colo. 1994). Thus, by analogy, a finding that a juvenile cannot be restored to competency is a final adjudication on the merits.
¶ 29 A finding that a defendant is not guilty by reason of insanity is a final adjudication even though, by statute, trial courts retain jurisdiction "to resolve questions relating both to the defendant's conditional or unconditional release and care and treatment." Galves, 955 P.2d at 583-84.
¶ 30 Under section 19-2-1303(3)(c), if the prosecution has not "earlier" dismissed the case, a juvenile court may retain jurisdiction over a juvenile's case when he or she has been found "incompetent and unrestorable" for the "maximum possible sentence for the original offense ... unless the court makes specific findings of good cause to retain jurisdiction." In the latter circumstances, the court may retain jurisdiction up to the juvenile's twenty-first birthday. One reason for retaining jurisdiction, as suggested by section 19-2-1303(3)(a), is to allow the juvenile court to monitor whether the management plan places the juvenile "in the least-restrictive environment, taking into account the public safety and best interests of the juvenile."
¶ 31 Thus, by analogy, an order finding that a juvenile cannot be restored to competency is final even though the court maintains jurisdiction to establish and monitor a management plan. Like a court retaining jurisdiction over a case in which the defendant has been found not guilty by reason of insanity, the court in a juvenile case in which the juvenile has been found "incompetent and unrestorable" retains jurisdiction to resolve questions relating to the juvenile's *768 placement and treatment. See Galves, 955 P.2d at 583-84.
¶ 32 The prosecution has "a sufficient legal interest in the commitment and post-commitment phases of ... insanity adjudication[s] to support [its] standing to pursue the issue of treatment before the district court and to prosecute ... appeal[s]" concerning such issues. People v. Gilliland, 769 P.2d 477, 484 (Colo.1989). This is because the prosecution's "legal interest in an insanity adjudication does not end with the order of commitment but continues until such time as the defendant is unconditionally released from the order of commitment." Id. Thus, by analogy, the prosecution has a sufficient interest to recommend and object to conditions of a juvenile's proposed management plan before the magistrate and to litigate appeals concerning the plan.
¶ 33 Second, the combination of the finding that the juvenile cannot be restored to competency and the order establishing a management plan leaves nothing further for the court to do in order to completely determine the rights of the juvenile and the prosecution. See Guatney, 214 P.3d at 1051.

III. The Order Did Not Violate the Boy's Fifth Amendment Rights
¶ 34 Generally, we defer to the factual findings of the magistrate or the district court if they are supported by the evidence, and we review conclusions of law de novo. In re Parental Responsibilities of B.J., 242 P.3d 1128, 1132 (Colo.2010).
¶ 35 If we conclude that the magistrate's order requiring the boy to undergo a psychosexual evaluation violated his right to be free from compelled self-incrimination or his right to due process, we will uphold the district court's order. Cf. People v. Rosenthal, 617 P.2d 551, 555-56 (Colo.1980)(Fifth Amendment); People v. Chavez, 190 P.3d 760, 765 (Colo.App.2007)(due process). To reach a conclusion, we review this issue of law de novo. See People v. McBride, 228 P.3d 216, 227 (Colo.App.2009) (contention that court violated defendant's privilege against self-incrimination reviewed de novo); People v. Abdu, 215 P.3d 1265, 1270 (Colo.App.2009)(contention that defendant's due process rights were violated required de novo review of trial court's legal conclusions).
¶ 36 We must also interpret, for the first time, some provisions of Colorado's statutes governing the procedures for determining whether a juvenile is competent to stand trial. Statutory interpretation likewise raises an issue of law that we review de novo. Specialty Restaurants Corp. v. Nelson, 231 P.3d 393, 397 (Colo.2010).
¶ 37 When interpreting a statute, the goal is to discern and give effect to the legislature's intent. People v. Hickman, 988 P.2d 628, 634 (Colo.1999). In doing so, we first look to the plain language of the statute. People v. Janousek, 871 P.2d 1189, 1196 (Colo.1994). We must also consider the statute as a whole and interpret it in a way that gives "consistent, harmonious, and sensible effect to all its parts." In re Marriage of Ikeler, 161 P.3d 663, 667 (Colo.2007).
¶ 38 Here, we conclude that the magistrate's order for a psychosexual evaluation did not violate the boy's rights and the district court therefore erred when it set aside that part of the order.

A. The Statutory Scheme
¶ 39 The legislature has declared that the purposes of the Children's Code, to which the statutes we analyze below belong, include (1) securing care and guidance for children that will serve their best interests and the interests of society; and (2) removing children from parental custody only when their welfare and safety or the public's safety is endangered. § 19-1-102(1)(a), (c), C.R.S. 2011. To achieve these purposes, "the provisions of [the Children's Code] shall be liberally construed to serve the welfare of children and the best interests of society." § 19-1-102(2), C.R.S.2011.
¶ 40 As specifically pertinent here, the legislature has also declared that,
while holding paramount the public safety, the juvenile justice system shall take into consideration the best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice *769 system and to assist the juvenile in becoming a productive member of society.
§ 19-2-102(1), C.R.S.2011.
¶ 41 Courts presiding over delinquency cases have the authority, "[a]t any stage" of the proceedings, to order juveniles to submit to screenings to determine whether they would benefit from mental health services. § 19-2-710(1), C.R.S.2011. "Evidence or treatment" obtained as a result of this process is "not admissible on the issues raised by [pleas] of not guilty" unless juveniles put their mental health at issue. § 19-2-710(6), C.R.S.2011. When courts sentence juveniles who have been adjudicated guilty of delinquent acts, and who suffer from developmental disabilities or mental illness, they must determine what placements or mental health services best promote the interests of the juveniles and the safety of the public. § 19-2-906(1)(a), (2), (2.5)(a), C.R.S.2011.
¶ 42 More specifically, adult defendants found to be incompetent to stand trial cannot be tried unless and until their competency is restored. Jones v. District Court, 617 P.2d 803, 806 (Colo.1980). For juveniles, this process is governed by sections 19-2-1301 to -1305, C.R.S.2011. We have discussed some of the pertinent sections above in the course of deciding that we have jurisdiction to hear the prosecution's appeal.
¶ 43 Section 19-2-1305(3), C.R.S.2011, places restrictions on how any statements juveniles make in the course of this process may be subsequently used. It states:
Evidence obtained during a competency evaluation or during treatment related to the juvenile's competency or incompetency and the determination as to the juvenile's competency or incompetency are not admissible on the issues raised by a plea of not guilty.
(Emphasis added.)

B. Self-Incrimination
¶ 44 The Fifth Amendment privilege against self-incrimination applies to juvenile delinquency proceedings. In re Gault, 387 U.S. 1, 47-56, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Relying on Gault, a division of this court affirmed a trial court's refusal to order a juvenile, over his objection, to submit to a psychological examination for the purpose of determining whether his case should be transferred to adult court. People in Interest of A.D.G., 895 P.2d 1067, 1072 (Colo.App. 1994). The division held that such an order would impinge upon the juvenile's Fifth Amendment right to be free from compelled self-incrimination because (1) if transferred to adult court, the juvenile would be subject to greater penalties, including more significant loss of liberty, and would lose the opportunity to participate in juvenile rehabilitative services; and (2) statements the juvenile made during the evaluation could be used by the court to make the transfer decision. Id. However, the division was careful to distinguish an examination for the purposes of deciding whether to transfer a juvenile to adult court, which it characterized as "plainly adverse" to the juvenile, from a competency examination, which it described as serving a "neutral" purpose. Id. (quoting Estelle v. Smith, 451 U.S. 454, 465, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)).
¶ 45 However, the privilege against compelled self-incrimination is not violated if juveniles are given immunity that is coextensive with the protections afforded by the Fifth Amendment. See People in Interest of I.L., 176 P.3d 878, 879 (Colo.App.2007); People in Interest of E.W., 780 P.2d 32, 33 (Colo.App.1989). A statute creates such coextensive immunity if it precludes any use or derivative use of testimony in future criminal proceedings. Kastigar v. United States, 406 U.S. 441, 449, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); People ex rel. Smith v. Jordan, 689 P.2d 1172, 1174 (Colo.App.1984).
¶ 46 I.L., a dependency and neglect case, presents an example of such statutory immunity. There, the father objected to portions of a treatment plan that required him to participate in sexual abuse and domestic violence evaluations. He claimed that statements made during the evaluations could be used against him in a subsequent criminal case.
¶ 47 The division disagreed, concluding that section 19-3-207, C.R.S.2011, provided the father with sufficient immunity. This statute provides that "certain evidence concerning *770 a respondent parent in a dependency and neglect proceeding may not be used in a criminal case related to the same conduct." I.L., 176 P.3d at 879. Therefore, (1) the statute protected the father's Fifth Amendment rights because any statements the father made during the evaluations could not be admitted in a criminal case for "any purpose"; and (2) the father's treatment plan was not "rendered inappropriate" by the requirement that he undergo the evaluations. Id. at 879-80.
¶ 48 Based on our review of the relevant statutes and case law, we conclude that section 19-2-1305(3) provides the boy with immunity that is coextensive with the immunity provided by the Fifth Amendment's privilege against compelled self-incrimination. As a result of this statutory grant of immunity, we further conclude that any statements that the boy makes in the course of the psychosexual evaluation cannot be admitted in any criminal case, including any delinquency case, for any purpose. We reach this conclusion for three reasons.
¶ 49 First, this was the legislature's intent, see Hickman, 988 P.2d at 634, because the plain language of section 19-2-1305(3) establishes statutory immunity in these circumstances, see Janousek, 871 P.2d at 1196. If a court finds that a juvenile is incompetent to proceed and will not be restored to competency, the court must determine whether a management plan is necessary to promote the child's best interests and the public's safety. § 19-2-1303(3)(a). Management plans must address certain minimum requirements, including "treatment for the juvenile." Id. Therefore, because the psychosexual evaluation is part of the management plan, any statements that the boy makes in the course of that evaluation would be "[e]vidence obtained during ... treatment related to the [boy's] ... incompetency." § 19-2-1305(3). Such evidence is "not admissible on the issues raised by a plea of not guilty." Id.
¶ 50 Second, when we consider the Children's Code as a whole and interpret it in a manner that gives "consistent, harmonious, and sensible effect to all its parts," see Ikeler, 161 P.3d at 667, we discover other statutes within the Children's Code that support this conclusion.
 The purposes of the Code include promoting the best interests of the child and the protection of society. See §§ 19-1-102(1)(a), (c), 19-2-102(1). The requirement that the boy undergo a psychosexual evaluation can lead to acquiring information that supports both these goals.
 The statutes repeatedly emphasize treatment as a means of achieving these goals. For example, courts may order treatment for juveniles with mental illnesses or developmental disabilities who have been adjudicated as having committing delinquent acts. § 19-2-906(1)(a), (2), (2.5)(a). The results of the psychosexual evaluation could assist in setting a course of treatment for the boy.
 When courts order juveniles to submit to screenings to determine whether they would benefit from mental health services, evidence obtained from these evaluations is not admissible on issues raised by not guilty pleas unless the juveniles place their mental health at issue. § 19-2-710(1), (6). This statute emphasizes that the legislature believes the treatment of mental health conditions of juveniles is so important in promoting their best interests and the protection of society that it will bar this information from being introduced in delinquency cases in order to obtain their participation in the diagnostic process.
 The legislature has also stated that we should liberally construe the provisions of the Children's Code to promote "the welfare of children and the best interests of society." § 19-1-102(2). By construing section 19-2-1305(3) liberally to bar the admission of any statements the boy makes during a psychosexual evaluation for any purpose in any criminal proceeding, including delinquency proceedings, we promote those goals.
¶ 51 Third, our conclusion is consistent with the case law of this jurisdiction. Unlike in A.D.G., this case does not involve a transfer hearing, which carries the potential of increased penalties and greater loss of liberty. Rather, as the division in A.D.G. noted, *771 cases such as this one concern the "neutral" issue of incompetency. See Estelle, 451 U.S. at 465, 101 S.Ct. 1866; A.D.G., 895 P.2d at 1072. And, like the dependency and neglect statute interpreted by the division in I.L., section 19-2-1305(3) provides clear immunity. See I.L., 176 P.3d at 879. Thus, including a requirement in the management plan that the boy must undergo a psychosexual evaluation does not render that part of the plan inappropriate. See id. at 879-80; cf. People v. District Court, 731 P.2d 652, 656-57 (Colo. 1987) (court had authority to issue protective order barring law enforcement officials from using statements parents made in the course of participating in a court-ordered treatment plan in any civil or criminal case; the protective order excluded from its coverage statements about future criminal plans or previous crimes unrelated to the treatment plan).

C. Due Process
¶ 52 The boy raises two due process arguments. First, he contends that the court undermined his due process right to be presumed innocent by requiring him to undergo the psychosexual evaluation. See, e.g., Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)(the presumption of innocence is part of a defendant's right to a fair trial). However, because the magistrate found that the boy is incompetent to stand trial and that he cannot be restored to competency, he will never stand trial on these charges. See § 19-2-1303(3)(c) (limits on court's jurisdiction when juvenile cannot be restored to competency). Thus, the magistrate's decision to require a psychosexual evaluation as part of the management plan did not implicate the presumption of innocence.
¶ 53 Second, he submits that the psychosexual evaluation could result in increased "structure and supervision," amounting to a deprivation of his liberty without due process. We decline to address this argument.
¶ 54 The management plan that the magistrate approved included provisions for structure and supervision. The prosecution and the boy's attorney agreed to them. Although the magistrate indicated that the information from the psychosexual evaluation might be used to add restrictions, none has yet been suggested or added. Therefore, the boy's argument is premature, and we shall not address it. See People v. Lybarger, 700 P.2d 910, 915 (Colo.1985) ("Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such decision is clear and inescapable." (emphasis supplied)); People v. Strean, 74 P.3d 387, 393-94 (Colo.App. 2002)(court declined to address defendant's due process allegations concerning parole provisions because he was not eligible for parole, and his claim was, therefore, premature); see also City of Greenwood Village v. Petitioners for Proposed City of Centennial, 3 P.3d 427, 437 (Colo.2000) ("premature decisions of constitutional questions should be avoided").
¶ 55 The district court's order is reversed, and the case is remanded to the district court to reinstate the psychosexual evaluation as part of the boy's management plan.
Judge HAWTHORNE concurs.
Judge RUSSEL dissents.
Judge RUSSEL dissenting.
¶ 56 I think we lack jurisdiction over this appeal.
¶ 57 Under the Children's Code, the prosecution has "the same right to appeal questions of law in delinquency cases as exists in criminal cases." § 19-1-109(2)(a), C.R.S.2011. Therefore, we must determine whether this appeal is of the type authorized by section 16-12-102(1), C.R.S.2011. That statute allows the prosecution to challenge a broad range of rulings ("any question of law"), but only after the district court has entered a final order. See People v. Guatney, 214 P.3d 1049, 1050 (Colo.2009) (appeals on questions of law "are subject to the final judgment requirement of C.A.R. 1").[1]
*772 ¶ 58 As a rule, criminal cases are final only when the underlying charges have been resolved. See Guatney, 214 P.3d at 1051 ("[A] final judgment in a criminal case does not come until the defendant is acquitted, the charges are dismissed, or the defendant is convicted and sentence is imposed."). Here, the underlying charges have not been resolved. And though the district court could otherwise lose jurisdiction by statute, none of the pertinent circumstances have come to pass:
If the charges are not dismissed earlier by the district attorney, the charges against a juvenile found to be incompetent and unrestorable shall be dismissed no later than the maximum possible sentence for the original offense after the date of the court's finding of incompetent and unrestorable, unless the court makes specific findings of good cause to retain jurisdiction. However, in no case shall the juvenile court's jurisdiction extend beyond the juvenile's twenty-first birthday.
Section 19-2-1303(3)(c), C.R.S.2011.
¶ 59 The majority likens this case to one in which a criminal defendant has been found not guilty by reason of insanity. I reject that analogy. A verdict of not guilty by reason of insanity constitutes an "adjudication on the merits." People v. Serravo, 823 P.2d 128, 140 (Colo.1992). The same is not true of a finding that the defendant is incompetent to proceed. Rupert v. People, 156 Colo. 277, 279, 398 P.2d 434, 434 (1965).
¶ 60 I would dismiss this appeal for lack of jurisdiction.
Therefore, I respectfully dissent.
NOTES
[1] The right to appeal questions of law is different from the right of interlocutory appeal authorized by § 16-12-102(2), C.R.S.2011. The latter appeal does not require a final order, but it concerns only a narrow range of trial court rulings, and it must be filed in the supreme court. See C.A.R. 4.1; see also People v. S.X.G., 269 P.3d 735, 736-37 (Colo.2012) (dismissing an interlocutory appeal in a juvenile case for lack of a "trial court" ruling under section 16-12-102(2).)