# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 46

APRIL TERM, A.D. 2017

May 2, 2017

GLENN J. GUMPEL and MERRILY
GUMPEL, Trustees of the Glenn and Merrily
Gumpel Family Trust dated October 8, 2001,

Appellants
(Plaintiffs/Third Party Defendants),

v.

COPPERLEAF HOMEOWNERS
ASSOCIATION, INC., a Wyoming non-profit
corporation; RODERICK FULLER and
KATHLEEN A. FULLER, Trustees of the
Roderick and Kathleen Fuller Family Trust
dated January 16, 1997; MOONCREST
RANCH a/k/a Mooncrest Ranch, Inc., a
Wyoming Corporation successor by merger to
Rocking M Ranch, Inc.; and WELLS FARGO
BANK, N.A.

Appellees
(Defendants/Third Party Plaintiffs).

S-16-0167

*Appeal from the District Court of Park County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellants:*
> Matthew W. Kim-Miller and Jordan P. Helvic of Holland & Hart LLP, Jackson, WY. Argument by Mr. Kim-Miller.

*Representing Appellees:*
> Steven F. Freudenthal of Freudenthal & Bonds, P.C., Cheyenne, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    This is an appeal from the district court's ruling in a dispute between two neighboring Park County communities, the China Wall Tract and the Copperleaf Subdivision.  The court interpreted the China Wall Tract's restrictive covenants in a manner that will allow Copperleaf property owners access to and through certain areas in the China Wall Tract.  The Gumpel Family Trust, dated October 8, 2001 (Gumpel Trust), owns property in the China Wall Tract, and Glenn and Merrily Gumpel, as trustees and on behalf of the Gumpel Trust, appeal the district court's ruling.

[¶2]    We conclude that the district court did not err in its interpretation of the covenants, but we modify the court's ruling to clarify that an "invitee" and an "owner" do not share equivalent rights under the covenants.  We thus affirm, as modified.

## ISSUES

[¶3]    Gumpel Trust states the issues on appeal as follows:

> A.     Whether, based on a *de novo* review, the ambiguous "2005 Covenants" should have been interpreted in light of its surrounding circumstances so as to prohibit the Copperleaf "Tract O" owner, the Copperleaf lot owners and the Copperleaf HOA from accessing areas in the "China Wall Tract" outside of the Copperleaf Tract O open space?
> B.     Whether, based on a *de novo* review, the 2005 Covenants should have been reformed because of mutual mistake to prohibit the Copperleaf Tract O owner, the Copperleaf lot owners and the Copperleaf HOA from accessing areas in the China Wall Tract outside of the Copperleaf Tract O open space?
> C.     Whether, as a matter of law, based on the language of the 2005 Covenants, the Copperleaf lot owners and Copperleaf HOA are prohibited from accessing areas in the China Wall Tract outside of the Copperleaf Tract O open space?
> D.     Whether the 2005 Covenants' purported easement over the "recreational land" and hiking and riding trails near the rocky geological feature known as the "china wall" is void under W.S. § 34-1-141(a)?

1

# FACTS

[¶4]     This dispute involves two neighboring Park County communities, the China Wall Tract and the Copperleaf Subdivision.  The China Wall Tract is located in Section 15, T. 52N, R. 105W, 6th P.M., Park County, Wyoming (Section 15).  It consists of the Section 15 lands north of the centerline of the North Fork of the Shoshone River (North Fork) and includes approximately 600 acres owned by ten different land owners.  Copperleaf Subdivision is a located to the south of the China Wall Tract and includes property in Sections 15, 22, and 23 T. 52N, R. 105W, 6th P.M., Park County, Wyoming.  It consists of 131 single family lots, a tract for condominiums, and four additional tracts of land, and it encompasses a total of approximately 553 acres.  Tract O is the largest tract, at approximately 292 acres, and is dedicated to open space.

[¶5]     Tract O extends into Section 15 and into the China Wall Tract, but otherwise most of the Copperleaf Subdivision is located south of Section 15 and south of the North Fork[1].  The following map depicts how these communities are situated, as well as the Gumpel Trust property[2]:

---

[1] A few of the Copperleaf Subdivision single family lots extend into Section 15, but they are all south of the North Fork.

[2] This map was extracted from Gumpel Trust's opening brief.  Appellee Copperleaf objected to Gumpel Trust's inclusion of the map in its brief because the map is not in the record.  We understand Copperleaf's objection, and our use of the map here is for demonstrative purposes only.  The map was not submitted as evidence in the district court proceedings, and our reference to it does not make it record evidence.



## A.    History of Section 15 and Copperleaf Development

[¶6]    In 1980, YX Ranch, as owner and developer of Section 15, executed and recorded a "Declaration of Restrictions, Conditions and Protective Covenants" for Section 15 (hereinafter 1980 Covenants).  The 1980 Covenants were applicable to all lots in Section 15.  Concerning access to the Section 15 property north of the North Fork, now known as the China Wall Tract, Paragraph 9(a) provided that "[a]ccess to the property north of the Shoshone River will be by private bridge and private road as designated on the plat recorded with the County Clerk and referred to herein."

[¶7]   In 2004, the predecessor in interest to Worthington Group of Wyoming, Inc. (Worthington Group) began developing the Copperleaf Subdivision and submitted a sketch plan and related development applications to Park County.[3]   The proposed subdivision extended into Section 15, with Tract O, the land dedicated to meeting the subdivision's county-imposed open space requirement, extending substantially into the area of Section 15 north of the North Fork.   Because the proposed subdivision extended into Section 15, Worthington Group had to negotiate to have the 1980 Covenants vacated and replaced with covenants that would accommodate the proposed subdivision, including Tract O.

[¶8]   By this time, the Section 15 lots were no longer owned by a single entity, and Worthington Group was thus required to negotiate with several Section 15 landowners to vacate the 1980 Covenants.   The negotiations lasted several months and involved a number of issues, including cost sharing for replacement of the bridge over the North Fork, the safety of which had been called into question, access easements both north and south of the North Fork, and recreational and fishing rights both north and south of the North Fork.   They concluded in 2005 and resulted in "new restrictions, conditions and protective covenants for the lands in Section 15, Township 52 North, Range 105 West, 6th PM, Park County, Wyoming, which lie north of the centerline of the North Fork of the Shoshone River[.]"

[¶9]   The new covenants, entitled "March 21, 2005 Declaration of Restrictions, Conditions and Protective Covenants for Section 15 (China Wall Tract)" (hereinafter 2005 Covenants), were recorded on August 14, 2006.   With regard to access and easement rights, the 2005 Covenants generally provided China Wall Owners access as defined by a 1980 Record of Survey, recorded on January 24, 1980.

[¶10]  Park County approved the final plat for the Copperleaf Subdivision on March 14, 2006, and on September 21, 2007, Worthington Group recorded the plat and restrictive covenants for the Copperleaf Subdivision.   At some point thereafter, Worthington Group defaulted on its mortgage obligations, and on December 8, 2010, the Park County Sheriff conducted a foreclosure sale on property within Copperleaf Subdivision on which Worthington Group had given mortgages to Shoshone First Bank, predecessor to Wells Fargo Bank, N.A. (Wells Fargo).   Through that foreclosure sale, Wells Fargo purchased the great majority of the single family lots, Tracts O, R, S, and W, and most of the condominium lots in Tract F.   On March 5, 2012, Wells Fargo recorded the Sheriff's Deed that conveyed it title to that property.

B.      **Present Dispute and Proceedings in District Court**

---

[3] Worthington Group's predecessor in interest was Northfork Communities, Inc., and both entities shared the same officers.  For ease of reference, we will refer to the entities collectively as Worthington Group.

[¶11] On September 30, 2011, the president of the Copperleaf Homeowners Association (Copperleaf HOA) sent a letter addressed to property owners in the China Wall Tract. The letter concerned fishing rights on the North Fork and stated, in part:

> Attached is a plat map which outlines the boundaries of the Copperleaf lands as platted. The thread (or centerline) of the river has been highlighted in red, yellow, and blue.
> The portion of the river that is indicated in red, lies within section 15 and may be accessed by Copperleaf property owners and property owners in Section 15 per the [2005 Covenants]. Please note that this area of the river within Section 15 lies approximately 300 feet to the north and west of the bridge and continues west as indicated.
> The portion of the river that is indicated in yellow is bound by Copperleaf lands on the north and south sides of the river, lies within Section 22 and is not an area available to anyone for access, parking and fishing or recreating other than Copperleaf property owners. This seems to be the area of greatest misunderstanding.

[¶12] The dispute over the location of the China Wall Owners' fishing rights continued, and on October 29, 2012, a number of property owners in the China Wall Tract filed a complaint in district court against the Copperleaf HOA, alleging the HOA was interfering with their fishing rights.[4] Through their complaint, Plaintiffs sought a declaration that under the 2005 Covenants the China Wall Owners are entitled to recreational use of the north and south sides of the North Fork in both Sections 15 and 22. Plaintiffs further alleged that "[a]s a result of a scrivener's error and/or mutual mistake of the parties, the 2005 Covenants failed to adequately set out" the China Wall Owners' recreational access to the North Fork in both Sections 15 and 22. Plaintiffs thus also requested that the 2005 Covenants be reformed to correct the mistake.

[¶13] On December 3, 2012, Copperleaf HOA filed its answer and counterclaims. Through its counterclaims, Copperleaf HOA sought declaratory and injunctive relief: 1)

---

[4] Throughout our opinion, we refer to all owners of property in the China Wall Tract as "the China Wall Owners." We refer to the China Wall Tract property owners who were named plaintiffs in the complaint as "Plaintiffs." The originally named plaintiffs included: Robert Williams and Mary Williams, husband and wife; Cliff Boltz and Donna Boltz, husband and wife; Brooks J. Roddan and Leaann Roddan; husband and wife; Philipps Ltd. Investments, Vince Philipps and Judith Philipps, husband and wife; and Glenn Gumpel and Merrily Gumpel, husband and wife. During the course of proceedings below, the district court entered an order substituting parties to correct and update the names in which the Plaintiffs' property was held. The only substitution relevant to this appeal was the substitution of Glenn J. Gumpel and Merrily Gumpel, Trustees of the Glen and Merrily Gumpel Family Trust dated October 8, 2001, for Glenn and Merrily Gumpel, Husband and Wife.

limiting the access route through Copperleaf Subdivision that China Wall Owners are entitled to use to access their property; 2) recognizing the rights of Copperleaf HOA and its members to have walking and vehicular access to Tract O in Section 15; and 3) recognizing the right of Copperleaf HOA and its members to have walking and vehicular access through the China Wall Tract to National Forest lands north of the China Wall Tract.

[¶14] On April 3, 2014, Copperleaf HOA amended its answer and counterclaims to assert additional claims for declaratory and injunctive relief. The additional claims sought relief: 1) prohibiting China Wall Owners from granting access to commercial outfitters, guides, and businesses through Copperleaf Subdivision to access National Forest lands north of the China Wall Tract; 2) recognizing the right of Copperleaf HOA and its members to have walking and vehicular access through the China Wall Tract to State lands west of the China Wall Tract; and 3) recognizing Copperleaf HOA's and its members' right of access to and recreational use of the physical feature known as the China Wall within the China Wall Tract.

[¶15] Copperleaf HOA also filed on April 3, 2014, a third party complaint against all China Wall Owners, which was followed on April 4, 2014, by Plaintiffs' amended complaint, which added four China Wall Owners as named defendants. These pleadings did not change the claims asserted by the parties and were instead intended to ensure that all the necessary parties were joined and properly aligned. On June 30, 2014, Copperleaf HOA filed a motion to realign the parties. Through that motion, it asserted that the Fuller Trust and Mooncrest Ranch (successor by merger to Rocking M Ranch, Inc.), both China Wall Owners, had determined they were aligned with Copperleaf HOA on the substantive issues in dispute and desired to be realigned with Copperleaf HOA as Defendants, Counterclaimants, and Third Party Plaintiffs. The district court, noting no opposition to the motion, granted the motion to realign the parties.

[¶16] In September 2014, the parties filed competing motions for summary judgment. During the hearing on those motions, the district court and the parties discussed joining Wells Fargo as a necessary party, and with the parties' agreement, the court directed that steps be taken to join Wells Fargo. After the hearing, but before the district court issued an order on the summary judgment motions, Wells Fargo entered its appearance as a named defendant and third party plaintiff. Attached to that entry of appearance was an affidavit by Curtis E. Abernathy, a Wells Fargo vice president, which stated, in part:

> 6. Without amending, altering or diminishing the terms and conditions of the subdivision approval for the Copperleaf Subdivision from the Park County Commissioners, Wells Fargo designates the Copperleaf Homeowners Association, Inc. and each of its members as invitees of Wells Fargo under Article VI, Section E, of the

6

"March 21, 2005 Declaration of Restrictions, Conditions and Protective Covenants for Sec. 15 (China Wall Tract)" as filed of record on August 14, 2006 in the office of the ex officio recorder and County Clerk of Park County, Wyoming at Reception No. 2006-6322 ("2005 China Wall Covenants"). [citation to summary judgment exhibit omitted]

[¶17] On May 18, 2015, the district court entered an order joining Wells Fargo as a defendant and third party plaintiff.[5] On September 22, 2015, the court issued its decision on the parties' cross motions for summary judgment. The court granted summary judgment:

1)      to Copperleaf HOA on Plaintiffs' reformation claim, finding Plaintiffs failed to rebut Copperleaf HOA's showing that no mutual mistake had occurred in the drafting of the 2005 Covenants' provisions governing fishing and recreational rights;

2)      to Copperleaf HOA on Plaintiffs' claim to fishing and recreational rights on Section 22, finding that under the clear and unambiguous terms of the 2005 Covenants, the China Wall Owners did not have fishing or recreation rights on any land other than those lands in Section 15, north of the centerline of North Fork;

3)      to Plaintiffs on the question of the China Wall Owners' access to the China Wall Tract through Copperleaf Subdivision, finding that such access was as defined in a recorded easement entitled the Worthington Easement;

4)      to Plaintiffs on the question of the China Wall Owners' right to grant access to outfitters, guides, and businesses for commercial purposes over the Copperleaf Subdivision for access to the National Forest lands north of the China Wall Tract, finding that by its clear and unambiguous terms, the Worthington Easement may be used by the China Wall Owners and their "visitors, licensees and invitees;"

5)      to Plaintiffs on the question of Copperleaf HOA's and its members' access through the China Wall Tract to reach Tract O, or State or National Forest lands, finding that under the clear and unambiguous terms of the 2005 Covenants, those covenants do not apply to Copperleaf HOA or its members or confer any right or benefit on Copperleaf HOA or its members.

[¶18] At the close of the district court's written decision, the court instructed the parties as follows:

_____

[5] Copperleaf HOA and the parties aligned with it will be referred to collectively as "Copperleaf."

7

> The Court believes that all pending motions and all pending issues have been decided in this *Decision Regarding Motion to Strike and Competing Motions for Summary Judgment*. In the event that there are pending motions or material pending issues which remain undetermined, counsel should <u>immediately</u> notify the Court and all other counsel, <u>in writing</u>, specifying those matters which require further determination.

[¶19] On October 22, 2015, Copperleaf filed a notice of pending issues. Through that notice, Copperleaf notified the district court that neither the summary judgment motions filed to date nor the court's ruling on those motions addressed the question of Wells Fargo's rights under the 2005 Covenants as owner of Tract O in the China Wall Tract. In response, on November 17, 2015, the court issued a briefing schedule for the parties to address the question of Wells Fargo's rights. On the same date, the court issued its final order on the first round of summary judgment motions.

[¶20] Copperleaf thereafter filed a supplemental motion for summary judgment, by which it sought a declaratory judgment that Wells Fargo, as owner of Tract O, has the right: to use walking or vehicular access routes through the China Wall Tract to access Tract O and State lands; to use all other walking or vehicular access routes through the China Wall Tract, with the exception of the access to National Forest lands; and to access the recreational lands and hiking and riding trails along the China Wall. Copperleaf also requested a declaratory ruling that Copperleaf HOA and its members, as invitees of Wells Fargo, have access to the same routes and areas in the China Wall Tract.[6]

[¶21] Plaintiffs opposed Copperleaf's supplemental motion, Gumpel Trust filing its own separate opposition. Plaintiffs, other than Gumpel Trust, argued that Wells Fargo may only use its lot in the China Wall Tract property for a single family purpose and using its rights under the 2005 Covenants as a means to treat Copperleaf HOA and its members as invitees is an unpermitted commercial purpose. In its separate opposition, Gumpel Trust argued: 1) the language of the 2005 Covenants and the circumstances surrounding their execution make it clear the China Wall Owners did not intend to allow the Tract O owner the type of access Copperleaf asserted; 2) allowing Wells Fargo to designate Copperleaf HOA and its members as invitees equates to granting an appurtenant easement without adhering to the requirements for an easement and would overburden the easement; 3) an invitee may only be a business visitor or a member of the public to whom the premises are held open and Copperleaf HOA and its members fit neither definition; and 4) the

---

[6] Copperleaf's motion also sought a declaratory judgment relating to the access rights of the Fuller Trust, as a China Wall Owner. The district court's ruling on the Fuller Trust rights of access is not, however, challenged on appeal, and we therefore will not discuss the parties' arguments or the district court's ruling on that question.

easement for access to recreational lands and hiking and riding trails along the China Wall fails for lack of an adequate description of the easement's location.

[¶22] On February 8, 2016, the district court issued its decision granting Copperleaf's supplemental motion for summary judgment. The court ruled: 1) under the clear and unambiguous terms of the 2005 Covenants, Wells Fargo is an "owner" and that, as an owner, Wells Fargo had the same access rights as any other China Wall Owner, as defined by the 1980 Record of Survey, except for National Forest access; 2) Wells Fargo may grant Copperleaf HOA and its members permission, as invitees, to enter or access the easements and rights-of-way granted to Wells Fargo under the 2005 Covenants; 3) " 'invitees' of Wells Fargo have the same rights and privileges as Wells Fargo under the terms of the 2005 Covenants;" and 4) the easements granted by the 2005 Covenants were described in sufficient detail to be enforceable.

[¶23] On April 1, 2016, the district court entered its final order granting Copperleaf's supplemental motion for summary judgment. On April 28, 2016, Gumpel Trust, the only party to appeal, filed a notice of appeal to this Court, appealing all of the district court's summary judgment decisions and orders.

## STANDARD OF REVIEW

[¶24] We review the district court's entry of summary judgment as follows:

> Summary judgment can be an appropriate resolution of a declaratory judgment action, and we invoke the usual standard for review. *Continental Western Ins. Co. v. Black*, 2015 WY 145, ¶ 13, 361 P.3d 841, 845 (Wyo. 2015). Summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2016 WY 67, ¶ 29, 375 P.3d 769, 275 P.3d 769, 778 (Wyo. 2016). We review a grant of summary judgment deciding a question of law de novo. *Id*. We accord no deference to the district court on issues of law and may affirm the summary judgment on any legal grounds appearing in the record. *Sky Harbor Air Serv., Inc. v. Cheyenne Reg'l Airport Bd.*, 2016 WY 17, ¶ 40, 368 P.3d 264, 272 (Wyo. 2016).

*Cheyenne Newspapers, Inc. v. City of Cheyenne*, 2016 WY 125, ¶ 10, 386 P.3d 329, 333 (Wyo. 2016).

[¶25] The interpretation of covenants imposing restrictions or conditions on the use of land is a question of law we review *de novo*. *Wimer v. Cook*, 2016 WY 29, ¶ 21, 369 P.3d 210, 218 (Wyo. 2016).

## DISCUSSION

### I. Wells Fargo's China Wall Tract Access Rights

[¶26] To determine Wells Fargo's access rights to the China Wall Tract, the district court was required to determine Wells Fargo's rights as the owner of Tract O, a substantial portion of which lies in the China Wall Tract. In answering this question, the court looked to the terms of the 2005 Covenants, found them clear and unambiguous, and concluded that Wells Fargo is an "owner" with the same access rights as any other "owner" under the covenants.

[¶27] Gumpel Trust contends that the district court erred in its ruling because it failed to consider extrinsic evidence, including the history of the area's development, the negotiations between the Copperleaf developers and the Section 15 owners, and the conditions on the ground in interpreting the 2005 Covenants. It asserts that such evidence should have been considered because the covenants are ambiguous. In the alternative, it argues that even if the covenants are determined to be clear and unambiguous, the evidence should have been considered as an aid in interpreting the covenants.

[¶28] We agree with the district court's finding that the 2005 Covenants are clear and unambiguous and with its interpretation of Wells Fargo's access rights. To reach this conclusion, we begin by addressing the controlling covenant provisions and their plain meaning. We will then turn to the Gumpel Trust's arguments concerning extrinsic evidence, addressing first the alleged ambiguities in the covenants and then the use of extrinsic evidence to interpret a clear and unambiguous contract.

### A. Plain Meaning of 2005 Covenant Terms

[¶29] Covenants are contractual in nature and we therefore interpret them as we would a contract. *Wimer*, ¶ 22, 369 P.3d at 218 (citing *Omohundro v. Sullivan*, 2009 WY 38, ¶ 9, 202 P.3d 1077, 1081 (Wyo. 2009)). This means we use the following rules of interpretation:

> Our review of a contract begins with an analysis of the document's plain language. *Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo.2012).
>
> [T]he words used in the contract are afforded the plain

10

> meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo.1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.* [*v. Texaco*], 882 P.2d [212,] 220 [(Wyo.1994)]; *Prudential Preferred Properties* [*v. J and J Ventures*], 859 P.2d [1267,] 1271 [(Wyo. 1993)]. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo.1996).

> *Id.*,¶ 26, 279 P.3d at 1013 (quoting *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 501–02 (Wyo.2011)). Further, we interpret the contract as a whole and read each provision in light of the others to find the plain meaning. *Id.*,¶ 28, 279 P.3d at 1013. We avoid interpreting provisions in a way that makes the other provisions inconsistent or meaningless. *Id*. Finally, "[b]ecause we use an objective approach to interpret contracts, evidence of the parties' subjective intent is not relevant or admissible in interpreting a contract." *Id.*, ¶ 27, 279 P.3d at 1013.

*Thornock v. PacifiCorp*, 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016).

[¶30] The provisions of the 2005 Covenants relevant to the question of Wells Fargo's access to the China Wall Tract are those governing applicability of the covenants and access and easements. Concerning their applicability, the covenants provide:

> Unless otherwise explicitly stated herein, these restrictions, conditions and protective covenants shall apply only to those portions of the Tract, which lie north of the centerline of the North Fork of the Shoshone River. These restrictions, conditions and protective covenants shall specifically exclude all Section 15 lands [s]outh of the centerline of the North Fork of the Shoshone River * * * .

[¶31] The term "Tract" in the covenants refers to the China Wall Tract, which is all of the Section 15 lands that lie north of the centerline of the North Fork. Also relevant to the covenants' applicability, is the definition they provide for the term "owner." The covenants define "owner" as follows:

11

For purposes of these restrictions, conditions and protective covenants, the term "owner" shall mean the owner(s) of record of one or more parcels in the tract, regardless of the size of the parcel(s) or the number of parcels owned.

[¶32]  Based on these provisions, there is no question that the 2005 Covenants apply to the substantial portion of Tract O that lies in Section 15 north of the centerline of the North Fork.  It is equally clear that Wells Fargo, as the record owner of Tract O, is an "owner," as the covenants define that term.[7]  The remaining question is whether the

---

[7] In its reply brief, Gumpel Trust argues:

A property "lot" is land that has been platted for development and independent sale.  When the 2005 Covenants were agreed to, the Copperleaf Developer * * * owned property north of the river that constituted "lots" under the 1980 Survey plat.  In 2007, the Copperleaf Developer and Park County replatted that property as part of Tract O in the Copperleaf plat, and that change in status from "lots" to a "tract" extinguished Wells Fargo's access rights under the 2005 covenants.

Gumpel Trust did not make this argument to the district court, and as a result, Copperleaf has moved to strike the Trust's reply brief as improper.  Gumpel Trust opposes the motion to strike on two grounds.  First, it contends that its argument was proper because it was in response to a new issue raised by Copperleaf in its Brief of Appellees.  Second, it argues that what this Court restricts on appeal is the raising of new issues, not the assertion of new arguments.  We reject both arguments.

Our precedent is clear that an argument may not be made for the first time on appeal.  *Miller v. Beyer*, 2014 WY 84, ¶ 34, 329 P.3d 956, 967 (Wyo. 2014) ("This Court has repeatedly stated that it will not consider arguments made for the first time on appeal.").  This rule holds true "whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court."  *Crofts v. State ex rel. Dep't of Game and Fish*, 2016 WY 4, ¶ 19, 367 P.3d 619, 624 (Wyo. 2016) (quoting *Basic Energy Servs., L.P. v. Petroleum Res. Mgmt., Corp.*, 2015 WY 22, ¶ 28, 343 P.3d 783, 791 (Wyo. 2015)); *see also Acorn v. Moncecchi*, 2016 WY 124, ¶ 61, 386 P.3d 739, n.13 (Wyo. 2016) ("As we have stated on numerous occasions, we will not consider evidence that is not part of the record on appeal or arguments that were not presented to the trial court.").

Gumpel Trust's assertion that its new argument was appropriately raised in its reply brief because Copperleaf raised a new issue in its briefing is equally unavailing.  Copperleaf argued in its brief that the 2005 Covenants were clear and unambiguous and under the plain meaning of those clear terms, the district court correctly ruled on Wells Fargo's access rights.  This was not Copperleaf raising a new issue on appeal.  This was Copperleaf responding to the Trust's arguments that the 2005 Covenants are ambiguous and cannot be interpreted without resort to extrinsic evidence.

Gumpel Trust's argument that Wells Fargo lost its rights under the 2005 Covenants when the Copperleaf Subdivision was platted is a new argument on appeal, and we therefore will not consider the argument.  Having concluded we will not consider the new argument, we have no need to also strike the reply brief and decline to do so.

covenant provisions governing access and easements contain language that would deprive Wells Fargo of the same access rights granted other "owners" in the China Wall Tract.

[¶33] Article VI of the covenants governs access and easements. It provides in relevant part:

> A. Access to the China Wall Tract is by private bridge. A Wyoming limited liability company (LLC), known as the Northfork Bridge Association, LLC, will hold the bridge in ownership by conveyance of a parcel of land, 60 feet in width and 200 feet in length to the Association by Rocking M Ranch, Inc., a Wyoming corporation, on _____ by that certain Warranty Deed recorded at _____ in the records of the Park County Clerk and Recorder.
>
> * * * *
>
> C. Access to the China Wall Tract will be by the rights-of-way and access easements illustrated in the Record of Survey recorded January 23, 1980 in Block C of Plats, Page 139, of the records of the Park County Clerk and Recorder, the rights-of-way and access easements are more fully described in Exhibits A and B, attached hereto. A road maintenance agreement (to be written and agreed upon by residents in the China Wall Tract) will be recorded in the records of Park County, Wyoming. Each owner in the China Wall Tract will be responsible for one share of the costs of such maintenance, as assessed by the road agreement. The portion of the road running across the southern end of the China Wall, from its intersection with the main road north of the bridge, will not be maintained as part of the road agreement.
>
> D. All lots within the China Wall Tract are subject to rights-of-way and easements for repair, replacement, installation and maintenance of all existing roads, water lines, drainage ditches, power lines, telephone lines and any other utilities, including all such easements and rights-of-way shown on the recorded plat.
>
> E. All easements and rights-of-way herein set forth and described and established in the plat shall be private easements and rights-of-way for the sole and exclusive use of the owners of the various lots described in the plat and their respective families, invitees, agents, employees, heirs, successors and assigns.
>
> * * * *

I.     Except for road crossings shown on the recorded plat, the rock formation known as the China Wall will be left in its present condition for the benefit of all owners of the China Wall Tract. All owners shall have access to the recreational lands and hiking and riding trails along the China Wall.

J.     All owners of the building lots in the China Wall Tract shall have access to the National Forest on the roadway in Lot 3 west of the Wall Creek and east of the China Wall to the forest boundary. A record of survey of said road was recorded on _____ at _____ in the records of the Park County Clerk and Recorder and the centerline of said roadway is described more particularly in Exhibit C attached hereto.

K.     All owners shall have access to the recreational lands on the north side of the North Fork of the Shoshone River as designated on the recorded plat, and access through those lands to the river for fishing.

[¶34]   The only provision in Article VI that distinguishes among the owners of lots in the China Wall Tract is Section J, which restricts National Forest access to building lot owners. Because Tract O is not a building lot, Wells Fargo does not have National Forest access. Article VI does not otherwise contain any clear restriction on the access and easement rights of Tract O.

[¶35]   Nor do we find an implied restriction on Tract O's access and easement rights in the use of the term "lot" in the Article VI provisions. The 2005 Covenants do not define the term "lot," so we look to its plain meaning to determine how the term is used. Black's Law Dictionary defines "lot" as a "tract of land, esp. one having specific boundaries or being used for a given purpose." *Black's Law Dictionary* 1032 (9th ed. 2009). The ordinary dictionary definition is "a portion of land" or "a measured parcel of land having fixed boundaries and designated on a plot or survey." *Merriam-Webster's Collegiate Dictionary* 736 (11th ed. 2007). Given that the term "lot" is a general reference to a parcel of land with boundaries, we find no intention in the use of that term in Article VI to distinguish Tract O from any the other parcel of land in the China Wall Tract.

[¶36]   The covenant provisions outside the Article VI access and easement provisions likewise do not suggest that the term "lot" is used in the covenants only when referring to lands other than Tract O. The provision that comes closest to limiting the term's meaning is Article I, Section A, which states that "[a]ll lots contained in the above-described property shall be used exclusively for the purpose of single-family residences." When we read this provision in context, however, we find no intention to equate the term "lot" with the term "building lot" or to otherwise limit use of the term to lands other than Tract O.

14

[¶37]   First, the provision immediately following the Section A restriction prohibits retail or commercial use of property and the construction of multi-family, rental or commercial buildings.  Reading Section A in context, it is a limit on the type of construction allowed in the China Wall Tract, not an effort to limit the meaning of the term "lot."  Were we to read it otherwise, it would exclude Tract O from a number of covenant restrictions and requirements that by their terms apply to a "lot."  For example, Article IX requires that "[e]ach lot shall be kept in a clean and sightly condition at all times," and that "[a]ll manure from livestock must be disposed of so as not to create any nuisance to adjoining landowners * * * ."  Article X, Section C states, "No owner or occupant shall allow or permit any noxious weeds to grow or ripen upon any lot.  Each and every owner or occupant is responsible for removal of such at their own expense."  Surely, the China Wall Owners intended that these types of restrictions apply equally to Tract O.[8]

[¶38]   In the absence of clear language evidencing such intent, we are unwilling to equate the terms "lot" and "building lot," or conclude that the term "lot" refers to China Wall Tract lands other than Tract O.  We thus conclude that, with the limited exception of National Forest access, nothing in the plain language of the 2005 Covenants indicates that the owner of Tract O is to be treated differently from any other China Wall Owner for purposes of access and easements.  We turn next to the ambiguities asserted by the Gumpel Trust and explain why we reject the alleged ambiguities as cause to question the plain meaning we have found in the covenants' access and easement provisions.

## B.      Alleged Ambiguities in 2005 Covenants

[¶39]   Gumpel Trust contends that the 2005 Covenants are ambiguous and the district court thus erred in refusing to consider extrinsic evidence to interpret the covenant provisions governing access and easements.  Treating the 2005 Covenants as we would any contract, we determine whether the covenant terms are ambiguous by looking to the language of the covenants.  We will find an ambiguity in a covenant term only "if indefiniteness of expression or double meaning obscures the parties' intent." *Pennaco Energy, Inc. v. Sorenson*, 2016 WY 34, ¶ 41, 371 P.3d 120, 130 (Wyo. 2016).  Against this standard, we consider the ambiguities alleged by Gumpel Trust.

### 1.      Silence or Lack of Clarity on Critical Terms

[¶40]   Gumpel Trust first argues that the 2005 Covenants are ambiguous because they are silent or unclear on whether Wells Fargo, the Copperleaf lot owners, and Copperleaf

---

[8] We understand that when the 2005 Covenants were executed, it was anticipated that Tract O would be maintained as open space, meaning kept in its natural state or used strictly for agricultural purposes, and this may have made some of the covenant restrictions and requirements redundant.  We nonetheless find it unlikely the China Wall Owners intended to exempt Tract O from the restrictions and requirements imposed on "lot" owners.

HOA have any rights outside Tract O, a matter that Gumpel Trust asserts was of critical importance to the China Wall Owners. It contends this ambiguity was highlighted by the district court's conflicting summary judgment rulings in which the court first concluded that the 2005 Covenants conferred no benefits or rights on Copperleaf lot owners or Copperleaf HOA and then in its second ruling concluded that Copperleaf HOA and its members may have access to the China Wall Tract as invitees of Wells Fargo. We find no ambiguity here.

[¶41] First, the 2005 Covenants are not silent on the rights of Copperleaf HOA and its members under the covenants. As the district court recognized in its first ruling, the covenants are clear that property owners outside the area covered by the 2005 Covenants, which would include Copperleaf HOA and its members, were conferred no benefits or rights by the 2005 Covenants. The district court's second summary judgment ruling did not conflict with that first ruling. The second ruling recognized the access and easement rights of Wells Fargo as a landowner in the China Wall Tract, which included the right to have invitees use the access and easements. The second ruling concerned Wells Fargo's rights as an owner in the China Wall Tract, as opposed to any independent rights of Copperleaf HOA and its members under the 2005 Covenants.

[¶42] With respect to the alleged ambiguity in the covenants' silence on whether the Tract O owner has rights of access outside Tract O, what Gumpel Trust is really asking is that this Court supply terms that were not written into the covenants. By their plain terms, the covenants do not treat the owner of Tract O differently from other China Wall Owners, except with respect to National Forest access. It is not the function of this Court or any court to write terms into a contract. We have said:

> Where a contract is silent on a particular matter that easily could have been drafted into it, a court should refrain from supplying the missing language under the pretext of contract interpretation. *Herling v. Wyoming Machinery Co.*, 2013 WY 82, ¶¶ 35–36, 304 P.3d 951, 960 (Wyo.2013). Courts are not at liberty to rescue parties from the consequences of a poorly made bargain or a poorly drafted agreement by rewriting a contract under the guise of construing it. *Hunter*, ¶ 23, 253 P.3d at 503.

*In re CDR*, 2015 WY 79, ¶ 30, 351 P.3d 264, 270-71 (Wyo. 2015).

## 2.    **Ambiguity in National Forest Access**

[¶43] Gumpel Trust next contends that the 2005 Covenants are ambiguous because they have conflicting National Forest access provisions. Specifically, Article VI, Section C provides that access will be as set forth in the 1980 Survey of Record, which survey

16

includes National Forest access, but then Article VI, Section J limits National Forest access to building lot owners. We again see no ambiguity here.

[¶44] As with contracts, we read covenants as a whole, meaning we must read the covenant provision defining access rights according to the 1980 Record of Survey together with the covenant provision that limits National Forest access. In doing so, we are mindful of our rule of statutory interpretation that general terms in a contract yield to specific terms if the two are not reconcilable. *Landen v. Prod. Credit Ass'n of Midlands*, 737 P.2d 1325, 1328 (Wyo. 1987) (citing *Flora Constr. Co. v. Bridger Valley Elec. Ass'n*, 355 P.2d 884, 886 (Wyo. 1960)). Using this rule of interpretation, we conclude that access is generally defined according to the 1980 Record of Survey, except for access to National Forest lands. The more specific provision controls access to National Forest Lands, and that access is granted only to owners of building lots.

[¶45] The provision limiting access to the National Forest does not create an ambiguity. It is merely an exception to the access defined by the 1980 Record of Survey.

### 3. Covenant Requirement that Lots Be Used for Single Family Residences

[¶46] Gumpel Trust next asserts (record citations omitted):

> Also exemplary of the ambiguities of the 2005 Covenants, these covenants require that lots be used "exclusively for the purpose of single-family residences" and provide the easements are for the owners and their "respective families." This focal point on families and residential use makes the 2005 Covenants ambiguous in light of the open space density setoff that is the sole reason for Tract O existing as part of Copperleaf. Wells Fargo is prohibited from building a residence on Tract O, by plat restrictions and Park County development permit density requirements. As entities that only own Tract O because it is County-required open space, neither Wells Fargo nor Copperleaf HOA have or will have any residence on Tract O nor, as corporate entities, will they have any "family."

[¶47] We are unable to see the ambiguity Gumpel Trust is asserting. As discussed above, the Article I, Section A requirement that "[a]ll lots contained in the above-described property shall be used exclusively for the purpose of single-family residences," when read in context, is a limitation on the type of structure that may be built in the China Wall Tract. The provision does not require that a lot owner build a residence, and of course nothing in the covenants requires that an owner have a family. Moreover, Article VI, Section E does not limit the use of easements and rights-of-way to owners and

17

their respective families.  It limits that use to "owners * * * and their respective families, invitees, agents, employees, heirs, successors and assigns."

[¶48]  The covenants are clear that an "owner" means "the owner(s) of record of one or more parcels in the tract[.]"  Whether Wells Fargo builds on its property or not, and whether it has family or not, it is an owner, with access and easement rights under the covenants.  We find nothing in the asserted focal point on families and residential use that creates an ambiguity in the access and easement provisions.

### 4.      Covenants' Use of Ambiguous, Undefined Terms

[¶49]  Claiming another ambiguity, Gumpel Trust contends:

> Many critical terms used in the 2005 Covenants are ambiguous as to their meaning: the 2005 Covenants use the terms "private roadways," "dedicated roadway[,]" existing roadways," the "plat" and "recreational lands" along the china wall—none of which are defined.  The words "private" and "exclusive" must be accorded a meaning—they are not surplusage, and newly having the 151 families now able to travel all over the property of the handful of parcel owners in the China Wall Tract violates the plain meaning of these terms.

[¶50]  This argument does not cite to the particular provisions in which these terms appear or otherwise provide the context in which they are used.  Nor does the argument explain how these terms and the failure of the covenants to expressly define them creates an ambiguity in the provisions governing the access and easement rights for Tract O.  We therefore will not consider the argument further.  *See Golden v. Guion*, 2016 WY 54, ¶ 31, 375 P.3d 719, 727 n.5 (Wyo. 2016) (Court does not consider issues not supported by cogent argument).

### 5.      Ambiguity Created by the 1980 Record of Survey

[¶51]  Gumpel Trust next contends that references in the 1980 Record of Survey to both existing and proposed roads, combined with the actual road conditions, create an ambiguity in the access rights.  We disagree.

[¶52]  The 1980 Survey of Record describes the location of the existing roads.  It is not ambiguous.  What the Gumpel Trust is asserting is not an ambiguity in the covenants but rather the potential for a future dispute concerning use of a road and whether that road is an existing road, a proposed road, or not a road at all.  That hypothetical dispute is not presently before this Court, and should such a dispute arise, it will need to be resolved at

that time, not in the context of this declaratory judgment action. *See Internat'l Ass'n of Firefighters Local Union No. 279 v. City of Cheyenne*, 2013 WY 157, ¶ 23, 316 P.3d 1162, 1169 (Wyo. 2013) (quoting *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 13, 206 P.3d 722, 727 (Wyo. 2009)) (" '[T]he Declaratory Judgments Act gives the courts no power to determine future rights or anticipated disputes or controversies.' ").

## 6.    Incomplete Terms and Failure to Attach Exhibits

[¶53]  Gumpel Trust next argues that because the covenants have blank spaces that were never completed, exhibits that were not attached, and references to non-existent documents and entities, it is impossible to interpret the covenants without the aid of extrinsic evidence.  In making this argument, Gumpel Trust does not explain how these oversights or omissions relate to the provisions governing the access and easement rights for Tract O or how they create an ambiguity in those provisions.  We therefore find no ambiguity.

## 7.    Extrinsic Evidence Showing Ambiguity

[¶54]  In its final assertion of ambiguity, Gumpel Trust asks this Court to find an ambiguity, not in the covenants' language, but based on extrinsic evidence.  That evidence includes course of conduct evidence, such as Gumpels' erection of a gate on an access easement and their grant of a National Forest access easement to building lot owners.  It also includes an email from a representative of the Copperleaf developer expressing concerns with the clarity of the 2005 Covenants.  In support of consulting extrinsic evidence to determine whether the covenants are ambiguous, Gumpel Trust directs us to our decision in *Orthopaedics of Jackson Hole, P.C. v. Ford*, 2011 WY 50, ¶ 38, 250 P.3d 1092, 1101 (Wyo. 2011) (looking to circumstances surrounding contract's execution to determine whether there was an ambiguity in the contract's language).

[¶55] We do not agree that *Orthopaedics of Jackson Hole* stands for the broad proposition that a court may consider extrinsic evidence to determine whether a contract is ambiguous.  In that case, extrinsic evidence was consulted solely to aid in defining the term "fixed asset." *Orthopaedics of Jackson Hole*, ¶¶ 37-38, 250 P.3d at 1101-02.  The use of extrinsic evidence to define a specialized or technical contract term is the limited purpose for which this Court has held extrinsic evidence may be used in interpreting a contract which is otherwise clear and unambiguous. *Thornock*, ¶19, 379 P.3d at 181 (extrinsic evidence permitted "only in situations where an otherwise unambiguous term had a different, special, or technical usage at the time the contract was executed").  Aside from this narrow exception, we have roundly rejected the use of extrinsic evidence to determine whether a contract is ambiguous:

> The ambiguity which justifies examining extrinsic evidence
> must exist ... in the language of the document itself.  It cannot

be found in subsequent events or conduct of the parties, matters which are extrinsic evidence. ***The suggestion that one should examine extrinsic evidence to determine whether extrinsic evidence may be examined is circuitous.***

*Wolter v. Equitable Res. Energy Co., Western Region*, 979 P.2d 948, 952 (Wyo. 1999) (quoting *State v. Pennzoil Company*, 752 P.2d 975, 978 (Wyo. 1988)) (emphasis and ellipses in original).

[¶56] Having found no ambiguity in the language of the 2005 Covenants, we reject Gumpel Trust's argument that the district court erred on this basis when it refused to consider extrinsic evidence to interpret the covenants. We next address the Trust's argument that the Court should consider extrinsic evidence even in the face of a clear and unambiguous contract.

## C.   Use of Extrinsic Evidence to Interpret Clear and Unambiguous Covenants

[¶57] Gumpel Trust argues that even if this Court finds the covenants clear and unambiguous, extrinsic evidence should be considered to interpret the meaning of the covenants and the intentions of the parties in executing the covenants. In so arguing, Gumpel Trust acknowledges our past decisions limiting the use of extrinsic evidence, but suggests the Court seems to be warming to a more expansive use of such evidence. We do not agree.

[¶58] In a recent decision, we reiterated that extrinsic evidence may only be used to aid in interpreting a clear and unambiguous contract "only in situations where an otherwise unambiguous term had a different, special, or technical usage at the time the contract was executed." *Thornock*, ¶ 19, 379 P.3d at 181. We rejected the offer of extrinsic evidence in *Thornock*, observing:

> While Mr. Thornock urges us to consider evidence outside of the four corners of the contract in order to fully understand the circumstances surrounding the second contract's formation, he is not doing so with the intent of providing an industry standard or a specialized meaning to a particular term. Instead, he is attempting to insert terms into the contract that simply do not exist.

*Thornock*, ¶ 21, 379 P.3d at 182.

[¶59] The same is true here. Gumpel Trust is not urging the use of extrinsic evidence to define specialized terms in the covenants. It is instead asking this Court to insert restrictions on the rights of Tract O that were not placed in the covenants, something we

will not do. *See Pennaco Energy*, ¶ 41, 371 P.3d at 130 ("The parties are free to agree to whatever lawful terms they desire, and we will not rewrite the agreement under the guise of judicial construction.").

[¶60] Because we find no ambiguity in the 2005 Covenants and no other reason to consider extrinsic evidence, we adhere to our conclusion that, with the limited exception of National Forest access, nothing in the plain language of the 2005 Covenants indicates the owner of Tract O is to be treated differently from any other China Wall Owner for purposes of access and easements. We thus uphold the district court's ruling that Wells Fargo has the access rights set by the 1980 Record of Survey, access to the recreational lands and hiking and riding trails along the China Wall, and the right to grant permission to its invitees to use such access and easements.

## II.    Propriety of Wells Fargo Invitee Designation

[¶61] Gumpel Trust contends that even if Wells Fargo, as owner of Tract O, has access and easement rights under the 2005 Covenants, Copperleaf HOA and its members do not qualify as invitees, as that term is used in the covenants. It further argues that Wells Fargo's blanket designation of Copperleaf HOA and its members as invitees is the equivalent of granting them an easement and overburdens Wells Fargo's easements as a matter of law.

## A.    Plain Meaning of "Invitee"

[¶62] The 2005 Covenants do not define the term "invitee," as it is used in the Article VI, Section E provision allowing owners and "their respective families, invitees, agents, employees, heirs, successors and assigns" to use the China Wall Tract easements and rights-of-way. We therefore look to the term's plain meaning, which according to the ordinary dictionary definition means "an invited person." *Merriam-Webster's Collegiate Dictionary* 659 (11th ed. 2007).

[¶63] Black's Law Dictionary also defines "invitee," but the definition it offers is the term's use in a premises liability context. It defines "invitee" to mean:

> A person who has an express or implied invitation to enter or use another's premises, such as a business visitor or a member of the public to whom the premises are held open. • The occupier has a duty to inspect the premises and to warn the invitee of dangerous conditions.—Also termed *business guest*; *licensee with an interest*. Cf. LICENSEE (2); TRESPASSER, BUSINESS VISITOR.

*Black's Law Dictionary* 904 (9th ed. 2009).

21

[¶64] Gumpel Trust argues for a definition of invitee akin to that found in Black's Law Dictionary but even more bound by premises liability principles. It proposes that the term be defined in keeping with the Restatement (Second) of Torts, which treats "invitee" as a "word of art, with a special meaning in the law," and defines it to exclude a "social guest." *See* Restatement (Second) of Torts § 332, cmt. a (1965). Drawing on that definition, Gumpel Trust contends that to qualify as an invitee under the covenants, the visitor must be either a member of the public visiting land held open for a public purpose or a business visitor.

[¶65] The covenants do not use the term "invitee" in a premises liability context and there is no indication that the parties to the covenants intended to give the term a narrow and "special meaning," drawn from premises liability principles. Indeed, we think it likely the signatories to the covenants would have been surprised to learn that they could not have social guests as invitees. We therefore reject the definition of invitee offered by Gumpel Trust.

[¶66] The plain meaning of "invitee" is one who is invited. Copperleaf HOA and its members thus qualify as invitees.

## B.    Unlawful Extension and Overburdening of Easement

[¶67] Gumpel Trust contends that Wells Fargo's invitee designation is the equivalent of granting Copperleaf HOA and its members an appurtenant easement across the China Wall Tract. We disagree.

[¶68] An easement is "an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property." *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 13, 327 P.3d 732, 737 (Wyo. 2014) (quoting *Hasvold v. Park Cnty. Sch. Dist. No. 6*, 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo. 2002)). It is generally irrevocable. *Markstein v. Countryside I, LLC*, 2003 WY 122, ¶ 30, 77 P.3d 389, 398 (Wyo. 2003) (quoting *Baker v. Pike*, 2002 WY 34, ¶ 11, 41 P.3d 537, ¶ 11 (Wyo. 2002)). We have described the indicia of an appurtenant easement as follows:

> In *R.C.R., Inc.*, this court identified certain terms which are "badges" of an appurtenant easement, including language which indicates: (1) that the easement was created to benefit a specific tract of land; (2) that the grant was for a perpetual right-of-way for ingress and egress, (3) that the grantee has the right to inspect and maintain the easement; (4) that the right is not limited to the possessor personally; (5) that the grant expressly extends the right to the grantees, their

heirs, executors, administrators, successors, assigns and legal representatives; and (6) that the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates. 978 P.2d at 586.

*Hasvold*, ¶ 21, 45 P.3d at 640.

[¶69] Wells Fargo's invitee designation is not an easement, appurtenant or otherwise. Contrary to Gumpel Trust's assertions, the invitee designation does not benefit a Copperleaf lot owner for so long as the lot is owned, and it does not necessarily automatically transfer when the lot is owned. The designation grants Copperleaf HOA and its members permission to use Wells Fargo's access and easement rights, and there is no language in the designation to suggest that Wells Fargo is limited in its ability to withdraw that permission. The designation is thus not a guarantee that a Copperleaf lot owner will have Wells Fargo's permission to use Wells Fargo's access and easement rights for any particular duration. The grant of permission is not perpetual and it is not appurtenant to the land.

[¶70] Given the ability of Wells Fargo to freely rescind its invitee designation, the designation plainly is not an easement. *See Markstein*, ¶ 30, 77 P.3d at 398 (distinguishing grant of permission to do something on land, which can be easily rescinded, from an easement, which is an irrevocable interest in land). Because the invitee designation is not an easement, we need not consider Gumpel Trust's argument that the creation of such an easement is, as a matter of law, an overburdening of Wells Fargo's access easements under the covenants. Any future dispute concerning the overburdening of the easements under the covenants must be resolved in a proceeding separate from this declaratory judgment proceeding. *See Internat'l Ass'n of Firefighters*, ¶ 23, 316 P.3d at 1169 (not proper in declaratory judgment proceeding to determine future rights or anticipated disputes).

[¶71] We do, however, believe that in relation to these questions, the district court's ruling may require minor modification. In one paragraph, the district court ruled that Wells Fargo may grant Copperleaf HOA and its members permission, as invitees, to enter or access the easements and rights-of-way granted to Wells Fargo under the 2005 Covenants. We have no concern with this statement of the court's ruling. Toward the end of the next paragraph, however, the court added that " 'invitees' of Wells Fargo have the same rights and privileges as Wells Fargo under the terms of the 2005 Covenants." We believe this overstates the rights of an invitee.

[¶72] Wells Fargo's invitees may use Wells Fargo's access and easements so long as Wells Fargo permits, but as invitees, that is the extent of their rights under the covenants. Nothing in the covenants suggests that an invitee steps into the shoes of an owner and

23

shares the owner's rights and privileges, including, for example, the right to extend use to invitees—that is, an invitee does not acquire, merely by being given permission to use an owner's access, the right to have its own invitees. Thus, for the sake of clarity, we modify the district court's ruling to remove the statement that " 'invitees' of Wells Fargo have the same rights and privileges as Wells Fargo under the terms of the 2005 Covenants."

## III.    Plaintiffs' Reformation Claim

[¶73] Gumpel Trust asserts that the district court rejected Plaintiffs' reformation claim based solely on the language of the covenants. It thus claims two errors in the district court's ruling—that the court erred in denying the reformation claim without considering extrinsic evidence and that the reformation claim should have been granted. We find no error in the district court's ruling.

[¶74] First, we disagree with Gumpel Trust's characterization of the district court's ruling. While the court did find that the covenants were clear and unambiguous, the court also concluded that "[t]here has also been no evidence submitted to the Court showing that there was any mistake in the way the 2005 Covenants were drafted." There is no indication in the district court's ruling that it refused to consider the evidence Plaintiffs submitted in support of their reformation claim. That being the case, we need not address Gumpel Trust's claim that the court erred in basing its decision solely on the covenant terms, and we turn to the merits of the reformation claim.

[¶75] This Court has defined reformation and the requirements for proving a claim for reformation as follows:

> Reformation is an equitable remedy arising from the tenet that " 'equity treats that as done which ought to have been done.'" *Hutchins v. Payless Auto Sales, Inc.*, 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002), quoting 66 Am.Jur.2d *Reformation of Instruments* § 2 at 528 (1973). The remedy is appropriate when a written instrument does not accurately memorialize the parties' agreement. In order to reform an instrument, the court must conclude there is clear and convincing evidence of:
>
> > (1) a meeting of the minds-a mutual understanding between the parties-prior to the time a writing is entered into, (2) a written contract, or agreement, or deed (3) which does not conform to the understanding, by reason of mutual mistake. *Toland v. Key Bank of Wyoming*, 847 P.2d 549, 554 (Wyo.1993); *Gasaway v. Reiter*, 736 P.2d

749, 751 (Wyo.1987); *Crompton v. Bruce*, 669 P.2d 930, 934 (Wyo.1983).

> *Id*. Clear and convincing evidence is "proof which would persuade a trier of fact that the truth of the contention is highly probable." *MacGuire v. Harriscope Broadcasting Co.*, 612 P.2d 830, 839 (Wyo.1980). *See also*, *Story v. State Bd. of Medical Examiners*, 721 P.2d 1013, 1014 (Wyo.1986); *In re: Matter of GP*, 679 P.2d 976, 982 (Wyo.1984).

> In order to establish a reformation claim, the proponent must demonstrate that a mutual mistake was made by the parties in the drafting of the instrument. The requirements for showing a mutual mistake are: a prior agreement that the written instrument undertook to evidence; a mistake occurred in the drafting of the instrument; and an absence of fraud or inequitable conduct on the part of a party. *Mathis v. Wendling*, 962 P.2d 160, 164 (Wyo.1998).

*Sanders v. Sanders*, 2010 WY 77, ¶¶ 12-13, 234 P.3d 343, 348 (Wyo. 2010).

[¶76]   Our first task in reviewing the district court's rejection of the reformation claim is to define precisely the mutual mistake that is purportedly at issue.  The district court, in its first summary judgment ruling, held that the 2005 Covenants conferred no benefit or right on Copperleaf HOA and its members.  That holding was not appealed, and we have confirmed it in our modification of the district court's second summary judgment ruling.  The covenants are thus clear that they did not confer on Copperleaf HOA and its members rights of access to the China Wall Tract.

[¶77]   The mistake Gumpel Trust is asserting then is not a failure to exclude Copperleaf HOA and its members from coverage under the covenants, but rather the failure of the covenants to restrict Tract O's access and easement rights.  This means the question we must focus on is whether the district court was presented with clear and convincing evidence that the parties who negotiated the 2005 Covenants had a mutual agreement to restrict the access and easement rights attached to Tract O.

[¶78]   The evidence presented to the district court, which Gumpel Trust also points to on appeal, consists of letters of intent and memorandums of understanding that preceded the execution of the 2005 Covenants and the affidavits of Merrily Gumpel, Frank Cocchia and Mary Williams.  We have reviewed each of these documents and find they fall short of the clear and convincing evidence required to support Gumpel Trust's reformation claim.

[¶79] With respect to the affidavits, Merrily Gumpel's affidavit acknowledges that while the Gumpels were original signatories to the covenants, the Gumpels bought their property after negotiations were complete and they did not participate in the negotiations. Merrily Gumpel's affidavit therefore cannot and does not attest to any personal knowledge of the negotiations. Mary Williams' affidavit attested to the parties' expressed understanding that Copperleaf HOA and its members would not have access rights under the covenants. Her affidavit did not provide evidence that showed the parties had a clear, mutual, and final agreement that Tract O would have restricted access and easement rights. Frank Cocchia's affidavit likewise fails to provide clear and convincing evidence of such an agreement.

[¶80] The letters of intent and draft memorandums of understanding are similarly deficient. They speak to restrictions on the access rights of Copperleaf HOA and its members but not to restrictions on the access and easement rights attached to Tract O. Additionally, the letters and memorandums do not contain language evidencing a final agreement among the parties.

[¶81] Gumpel Trust has not presented clear and convincing evidence that the parties who negotiated the 2005 Covenants had a mutual agreement to restrict the access rights attached to Tract O. The 2005 Covenants may reflect a failure to understand the ramifications of Tract O's access rights, but the district court was not presented with clear and convincing evidence that the covenants reflect a drafting mistake. We therefore find no error in the district court's rejection of this claim.

## IV. Adequacy of the Recreational Easement Description

[¶82] In its final argument, Gumpel Trust contends that the Article VI, Section I easement provided in the 2005 Covenants is void for lack of a sufficient description. We again find no error in the district court's rejection of this claim.

[¶83] The easement Gumpel Trust challenges is a recreational easement providing access to the area along the China Wall rock formation. Article VI, Section I reads:

> Except for the road crossings shown on the recorded plat, the rock formation known as the China Wall will be left in its present condition for the benefit of all owners of the China Wall Tract. All owners shall have access to the recreational lands and hiking and riding trails along the China Wall.

[¶84] The requirement that an easement's location be specifically described is statutory. Wyo. Stat. Ann. § 34-1-141 provides, in relevant part:

26

(a) Except as provided in subsection (c) of this section, easements across land executed and recorded after the effective date of this act which do not specifically describe the location of the easement are null and void and of no force and effect.

\* \* \* \*

(d) For purposes of this section the specific description required in an easement shall be sufficient to locate the easement and is not limited to a survey.

Wyo. Stat. Ann. § 34-1-141 (LexisNexis 2015).

[¶85] In addressing the sufficiency of an easement description, we have held that "the type of description necessary to satisfy the statute will depend on the nature of the encumbrance." *Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney Gen.*, 2009 WY 143, ¶ 38, 221 P.3d 306, 318 (Wyo. 2009). In *Horse Creek*, we upheld the sufficiency of the description for a public access easement that provided access to a reservoir and "all adjacent lands owned by the district." *Id*. We explained:

Section 34–1–141(d) states that a legal description from a survey is not required so long as the description is sufficient to locate the easement. The question for our determination, then, is whether the description of the lands "adjacent" to the reservoir is sufficient to locate property encumbered by the public access interest. As statutory and contract interpretation principles make clear, the plain and ordinary meaning of the words governs. "Adjacent" is defined as "nearby" or "having a common endpoint or border." *Webster's Ninth New Collegiate Dictionary* 56 (1991). *See also Board of County Commissioners of the County of Laramie v. City of Cheyenne*, 2004 WY 16, ¶¶ 20–31, 85 P.3d 999, 1005–09 (Wyo.2004) (interpreting the terms "adjacent" and "contiguous" in annexation statutes). We conclude that the plain meaning of the term "adjacent" is sufficiently definite to allow the encumbered property to be located.

*Markstein v. Countryside I, L.L.C.*, 2003 WY 122, ¶¶ 44–45, 77 P.3d 389, 402 (Wyo.2003) presented a problem similar to the one here. In *Markstein*, the owners of the servient estate argued that an agreement for a fishing rights

easement was void because it did not contain a specific legal description of the area encompassed by the easement in accordance with Wyo. Stat. Ann. § 34–1–141. We ruled that the agreement was not void because it provided "that the rights involved are to be used within a particular region of the servient estate" and there was "a specific legal description of this land attached as an exhibit to the agreement." The agreement also incorporated sketch maps to denote the area of land involved. *Id.*, ¶ 45, 77 P.3d at 402.

*Markstein* indicates that the type of description necessary to satisfy the statute will depend on the nature of the encumbrance. Obviously, a fishing easement is different from a road easement because more varied lands will be used to fulfill the dominant owner's right. In the context of a fishing easement, a more general description of the areas encumbered will be sufficient. Considering that the project agreement included a legal description of the reservoir, and that the nature of the public's recreation interest is such that it will be used over a broad area adjacent to the reservoir, the rationale employed in *Markstein* reinforces our conclusion that the description of all lands "adjacent" to the reservoir is sufficient to locate the encumbrance.

*Horse Creek*, ¶¶ 36-38, 221 P.3d at 317-18.

[¶86]   The China Wall is easily locatable, both on the ground and on the 1980 Record of Survey, which marks its approximate location.  The formation runs diagonally through Section 15, in roughly equal parts through Tract O and the Gumpel Trust property, and through a smaller portion of the Fuller property.  The record contains the following aerial overlay, which clearly depicts the formation.

28

[¶87]  Gumpel Trust does not claim vagueness in relation to the general location of the easement and does not object to the easement's use of the term "along." Gumpel Trust's



EXHIBIT "A"
COPPERLEAF HOMEOWNERS ASSOCIATION
WAPITI, WYOMING
AERIAL OVERLAY SHOWING
SECTION 15
IN
T. 52 N., R. 105 W., 6TH P.M.
PARK COUNTY, WYOMING (RESURVEY)

29

objection is to the use of the terms "recreational lands" and "hiking and riding trails." It contends that the use of these terms makes the easement impossible to locate.

[¶88]  With respect to "hiking and riding trails along the China Wall," the Gumpel Trust asserts there are no such trails and there is therefore no way to locate the easement.  In support of this assertion, it cites to Merrily Gumpel's affidavit, which contains her statement, "There are no established horse or hiking trails along the China Wall."  This affidavit evidence is inadequate to establish that there are no hiking or riding trails along the China Wall.  First, the affidavit's statement references "established" trails, with no explanation of what is meant by that term.  More importantly, the affidavit provides no foundation for the statement—something to explain how Ms. Gumpel came to determine that no trails exist on the China Wall formation.  We have said:

> Rule 56 requires that an affidavit supporting or opposing a summary judgment motion must be made based on personal knowledge, set forth admissible facts, and show that the affiant is competent to testify to the matters stated in the affidavit. W.R.C.P. 56(e). As noted above, "the material presented to the trial court as a basis for a summary judgment should be as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial." *Braunstein*, ¶ 13, 226 P.3d at 832. An affidavit that lacks foundation and specific supporting facts is inadequate for purposes of opposing a summary judgment motion.

*Rivers v. Moore, Myers & Garland*, 2010 WY 102, ¶ 22, 236 P.3d 284, 291 (Wyo. 2010).

[¶89]  The cited affidavit evidence is insufficient to establish that hiking and riding trails do not exist along the China Wall, and the record contains no other evidence to support this assertion.  We therefore find no inherent defect in the easement's reference to "hiking and riding trails."

[¶90]  In objecting to the term "recreational lands," Gumpel Trust argues (record cites omitted):

> [T]he term "recreational lands" is useless to locate the easement—is that 10' away from the wall, is that 100' away from the wall, is that 1000' away from the wall? What is the scope of recreation that is permitted on someone else's residential land, and what type of recreation is permitted? The complete vagueness (and lack of clarifying extrinsic evidence) voids this attempted grant.

[¶91] Gumpel Trust focuses its objection on the term "recreational lands," a term that is used elsewhere in the covenants.[9] We do not, however, view "recreational lands" as the operative term for locating the easement, but rather as a general description of the activities permitted on the easement. This is evident in Gumpel Trust's objection, which speaks more to vagueness in the type of activities permitted than to the description of the easement's location.

[¶92] The easement's location is "along the China Wall," which is similar to the access easement we upheld in *Horse Creek*. *Horse Creek*, ¶¶ 36-38, 221 P.3d at 317-18 (upholding easement described as "adjacent" to reservoir). Because the easement's description is sufficient and Gumpel Trust points to no authority that an easement is void if the activities it permits are not specifically delineated, we uphold the district court's order rejecting Gumpel Trust's challenge to the easement.

## CONCLUSION

[¶93] We uphold the district court's ruling that Wells Fargo, as the owner of Tract O in the China Wall Tract, has the same access rights as any other owner in the China Wall Tract, except National Forest access. The access rights include the right to have invitees, and Copperleaf HOA and its members qualify as invitees. We also uphold the district court's rulings on Gumpel Trust's reformation claim and challenge to the China Wall recreational easement.

[¶94] We modify the district court's ruling to remove the statement that " 'invitees' of Wells Fargo have the same rights and privileges as Wells Fargo under the terms of the 2005 Covenants." We do this to clarify that Wells Fargo's invitees may use Wells Fargo's access and easements so long as Wells Fargo permits, but as invitees, that is the extent of their rights under the covenants.

[¶95] The district court decision is affirmed, as modified.

---

[9] The identical reference to "recreational lands" is used in the covenant provision that provides the Gumpels an access easement to and through Tract O lands north of the North Fork. Article VI, Section K provides:

> All owners shall have access to the recreational lands on the north side of
> the North Fork of the Shoshone River as designated on the recorded plat,
> and access through those lands to the river for fishing.