23CA1220 Peo v Banks 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1220
Jefferson County District Court No. 20CR2998
Honorable Robert Lochary, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marqueil Deandre Banks,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Marqueil Deandre Banks, appeals his judgment of conviction on two counts of first degree murder and one count of aggravated robbery.  He argues that (1) the district court erred by denying his motion to transfer his case to juvenile court, and (2) his consecutive sentences of life with the possibility of parole after forty years for the two murder counts are unconstitutional.  We affirm.

## I.     Background

¶ 2     When Banks was sixteen years old, he shot and killed two teenage brothers during a robbery masquerading as a gun deal.

¶ 3     The shooting stemmed from a deal between another teenager, Michael Mendoza, and the two brothers to trade guns along with a cash payment from Mendoza.  Rather than complete the deal, however, Mendoza decided to rob the brothers.  He enlisted the help of two friends, who, in turn, enlisted the help of Banks and another teenager.  The plan was for Mendoza, Banks, and one of the friends to lure one of the brothers into a vehicle and rob him at gunpoint, while the others kept watch nearby in a different vehicle.

¶ 4     The plan did not go as intended.  When the group met the brothers, neither brother would get into the first group's vehicle.  Mendoza then got a shotgun from the trunk and pointed it at the

brothers. One of the brothers pointed his gun back at Mendoza and cocked it, and Mendoza tried to hit him with the shotgun. At that point, Banks, who was in the back seat of the vehicle, started shooting, hitting the brother twice and killing him. He then got out of the car and shot the other brother six times, killing him as well.

¶ 5 Banks was charged with two counts of first degree murder after deliberation, two counts of felony murder, two counts of aggravated robbery, and two crime of violence sentence enhancers.[1] Although Banks was a juvenile at the time of the shooting, the prosecution directly filed the complaint and information in the district court under section 19-2-517(1)(a), C.R.S. 2020.[2]

¶ 6 Banks moved to transfer the case to juvenile court and requested a "reverse transfer" hearing. After a three-day evidentiary hearing, the district court denied the motion. In doing so, the court

---

[1] Banks was also charged with possession of a weapon by a previous offender and possession of a handgun by a juvenile, but those charges were later dismissed on the prosecution's motions.

[2] Section 19-2-517, C.R.S. 2020, has since been relocated to section 19-2.5-801, C.R.S. 2024. *See* Ch. 136, sec. 2, § 19-2.5-801, 2021 Colo. Sess. Laws 614-18. We will cite section 19-2-517 because it was in effect at the time of Banks's offenses and the district court proceedings, but the relevant language has not materially changed.

separately considered each of the statutory factors in section 19-2-517(3)(b) and concluded that "a majority of the factors weigh against a transfer to the juvenile court." In particular, the court found that "the protection of the community requires a response and consequences beyond what the juvenile code contemplates."

¶ 7 A jury convicted Banks on all counts. After merging the two felony murder convictions and one of the aggravated robbery convictions into the first degree murder convictions, the court sentenced Banks to life in prison with the possibility of parole after forty years on each first degree murder conviction. Over Banks's objection, the court ordered those two sentences to run consecutively. The court sentenced Banks to a concurrent sentence of thirty-two years in prison for the aggravated robbery conviction.

## II. Reverse Transfer

¶ 8 Banks first contends that the district court misapplied the statutory factors when it denied his motion for a reverse transfer of his case to juvenile court. We perceive no abuse of discretion.

### A. Applicable Law and Standard of Review

¶ 9 A juvenile who is charged by direct filing in district court may move to transfer the case to juvenile court. § 19-2-517(3)(a). This

procedure, known as a "reverse transfer," seeks to move the case "from district court, where [the juvenile] would be tried as an adult, to juvenile court, where [the juvenile] would face prosecution under the Children's Code." *People v. Brown*, 2019 CO 50, ¶ 3.

¶ 10    The district court must transfer the case to juvenile court if it determines that "the juvenile and the community would be better served by [juvenile] adjudicative proceedings." § 19-2-517(3)(c).  In making this determination, the court must consider eleven factors:

> (I) The seriousness of the alleged offense and whether the protection of the community requires response or consequence beyond that afforded by [the juvenile system];
>
> (II) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
>
> (III) Whether the alleged offense was against persons or property, greater weight being given to offenses against persons;
>
> (IV) The age of the juvenile and the maturity of the juvenile, as determined by considerations of the juvenile's home, environment, emotional attitude, and pattern of living;
>
> (V) The record and previous history of the juvenile in prior court-related matters;
>
> (VI) The current and past mental health status of the juvenile as evidenced by relevant mental health or psychological assessments or

screenings that are made available to both the
district attorney and defense counsel;

(VII) The likelihood of the juvenile's
rehabilitation by use of the sentencing options
available in the juvenile courts and district
courts;

(VIII) The interest of the community in the
imposition of a punishment commensurate
with the gravity of the offense;

(IX) The impact of the offense on the victim;

(X) Whether the juvenile was previously
committed to the department of human
services following an adjudication for a
delinquent act that constitutes a felony; and

(XI) Whether the juvenile used, or possessed
and threatened the use of, a deadly weapon in
the commission of the delinquent act.

§ 19-2-517(3)(b); *see also People v. Mitchell*, 2024 COA 7M, ¶ 32

(*cert. granted in part* Nov. 4, 2024).

¶ 11    But while the district court must consider these factors, it has

discretion to determine their relative weight, as well as "how to

weigh the evidence presented regarding each factor." *Mitchell*,

¶¶ 35, 42; *cf. People in Interest of A.D.G.*, 895 P.2d 1067, 1071

(Colo. App. 1994) (noting that juvenile court's discretion to transfer

case to district court "includes choosing the weight to be given to

evidence relevant to the factors . . . as well as the weighing of the

factors themselves").  We review the district court's assessment of the statutory factors for an abuse of discretion.  *Mitchell*, ¶ 42.

### B.    Analysis

¶ 12    In its order denying Banks's motion for a reverse transfer, the district court separately addressed each of the statutory factors it was required to consider.  *See* § 19-2-517(3)(b).  For each factor, it made findings that were "grounded in the evidence," citing relevant testimony from the hearing.  *Mitchell*, ¶ 36.  Banks does not seriously contest those findings.  Instead, he asserts that the district court did not properly weigh the factors.  We disagree.

¶ 13    As the district court noted, almost all the factors weighed against a transfer to juvenile court.  The charged crimes — two counts of first degree murder after deliberation — were the most serious criminal offenses there are (first factor) and, by their nature, involved aggressive, violent, and willful conduct (second factor).  The offenses were against people (third factor), involved the use of a deadly weapon (eleventh factor), and had the ultimate impact on the victims and their families (ninth factor).  The gravity of those offenses warranted a commensurate punishment (eighth factor).  And Banks had five prior felony adjudications (tenth factor) and

6

nearly a hundred incident reports from youth correctional facilities, demonstrating an extensive record of unsuccessful attempts at rehabilitation by the juvenile system (fifth and seventh factors).

¶ 14 Banks's appeal centers on the fourth and sixth statutory factors — his age and maturity and his mental health status. He points out that he has ADHD and an intellectual disability, with an IQ placing him in the second to fourth percentile of others his age. He argues that his intellectual disability makes him "especially susceptible to manipulation," and he asserts that his past struggles in school and troubles with the law indicate a lack of maturity.

¶ 15 But the district court thoroughly considered Banks's intellectual disability, noting that Banks "functions on a cognitive level that is significantly below average for his peers." The court also acknowledged the trauma Banks had experienced and his behavioral problems at school, which the court recognized could have been tied to his intellectual disability. Indeed, the court cited the psychologist's testimony that "the juvenile systems would be better able to meet [Banks's] educational and treatment needs."

¶ 16 Notwithstanding Banks's intellectual disability and other personal challenges, however, the court concluded that a reverse

transfer was not appropriate in light of the other factors. Notably, the court also found that Banks's family loved him and had been "significantly involved in his life" and that schools and other institutions had made "extraordinary efforts" to meet Banks's needs, to no avail. We may not reweigh the evidence or second-guess the weight the district court afforded to each factor. *Mitchell*, ¶¶ 35, 42. Even if Banks's intellectual disability and maturity weighed in favor of a reverse transfer, the district court could properly determine that Banks and the community would not be better served by juvenile adjudicative proceedings, given the strength of the factors pointing in the other direction. *Id.* at ¶ 42.

¶ 17 Other than his intellectual disability, Banks's other arguments merely seek to chip away at the margins of the district court's analysis. For example, Banks asserts that (1) he did not play a "central role" in the offenses because he did not arrange the robbery; (2) the shooting was not premeditated or willful because it happened quickly; (3) the victims were not both minors, as the district court stated; (4) his prior felony adjudications were for nonviolent offenses; (5) he had a higher likelihood of rehabilitation

in youth correctional facilities than in prison; and (6) a juvenile court could have imposed a sentence commensurate to his crimes.

¶ 18    Though we question some of Banks's premises,[3] we need not dwell on each argument point by point because all fall within the district court's factfinding function and exercise of its discretion as part of a reverse transfer hearing.  To the extent Banks challenges the district court's factual findings, those findings are appropriately "grounded in the evidence."[4]  *Id.* at ¶ 36.  To the extent he challenges the weight the district court assigned to various factors vis-a-vis mitigating circumstances, that was within the district court's discretion.  *Id.* at ¶¶ 35, 42.  Even granting Banks the benefit of the arguments he makes, the district court did not abuse

---

[3] For example, whether or not Banks was aware of the robbery in advance (and Mendoza testified that he was), his role as the shooter was indisputably "central" to the murders; an act may be willful even if it happens quickly; and one of Banks's prior adjudications was for third degree assault of an at-risk victim, which requires causing bodily injury to the victim, § 18-3-204(1)(a), C.R.S. 2024.

[4] Banks is correct that the district court technically erred when it said that the offenses involved "the murder of two minors."  As Banks points out, one of the victims was eighteen years old.  But we do not view this discrepancy as material to the court's conclusion.

its discretion in determining that the circumstances of this case made it more appropriate for district court than juvenile court.

### III.    Constitutionality of Sentences

¶ 19    Banks contends that his consecutive sentences of life with the possibility of parole after forty years — making him first eligible for parole in eighty years — are unconstitutional because, together, they amount to a de facto sentence of life without the possibility of parole (LWOP).  He relies on a trio of cases forbidding (1) the death penalty for juvenile offenders, *Roper v. Simmons*, 543 U.S. 551, 578 (2005); (2) LWOP sentences for juvenile offenders convicted of non-homicide offenses, *Graham v. Florida*, 560 U.S. 48, 82 (2010); and (3) mandatory LWOP sentences for juvenile offenders, *Miller v. Alabama*, 567 U.S. 460, 479 (2012).  For two reasons, we disagree.

¶ 20    First, Banks did not receive a LWOP sentence.  *Graham* and *Miller* apply only when a juvenile is sentenced to the specific sentence of LWOP for one offense.  *Lucero v. People*, 2017 CO 49, ¶ 15.  They do not prohibit life sentences *with* the possibility of parole.  *Id.* at ¶ 21.  Nor do they prohibit lengthy aggregate sentences resulting from multiple convictions.  *Id.* at ¶¶ 19, 21.  Because Banks was not sentenced to LWOP on either offense,

neither *Graham* nor *Miller* applies.  *See id.* at ¶ 19 ("Multiple sentences imposed for multiple offenses do not become a sentence of [LWOP], even though they may result in a lengthy term of incarceration."); *People v. Godinez*, 2018 COA 170M, ¶ 97 (holding that *Lucero* "explicitly rejected" the argument that an aggregate sentence may be the "functional equivalent" of a LWOP sentence).

¶ 21     Banks attempts to distinguish *Lucero* on the ground that the defendant in that case was eligible for parole at the age of fifty-seven, while Banks will not be eligible for parole within his expected lifetime.  *See Lucero*, ¶ 19.  But *Lucero* did not turn on when the defendant was eligible for parole; it held categorically that *Graham* and *Miller* do not apply to non-LWOP sentences.  *Id.*; *see also id.* at ¶¶ 3-4 (explaining that while the court of appeals upheld the defendant's sentence because he would be eligible for parole within his lifetime, the supreme court took "a different approach").  And in another opinion issued the same day, the supreme court applied that holding to a defendant who was *not* eligible for parole within his expected lifetime.  *See People v. Rainer*, 2017 CO 50, ¶¶ 2-3.

¶ 22     For similar reasons, we reject Banks's attempt to draw a distinction between the "term-of-years sentences" in *Lucero* and the

11

life sentences with the possibility of parole after forty years in this case. *Lucero*, ¶ 19. Neither a term-of-years sentence nor a sentence of life with the possibility of parole is the "specific sentence" of LWOP. *Id.* at ¶ 15; *see People v. Davis*, 2018 COA 113, ¶¶ 55-56 (applying *Lucero* to consecutive sentences of life with the possibility of parole after forty years and eight years and one day).

¶ 23    Second, even if we were to treat Banks's consecutive sentences as a de facto LWOP sentence for purposes of *Graham* and *Miller*, that sentence would not violate either case. *Graham*'s prohibition on LWOP sentences for juvenile offenders convicted of *non*-homicide offenses would not apply to Banks, who was convicted of two counts of first degree murder. *See Graham*, 560 U.S. at 82. And *Miller*'s prohibition on *mandatory* LWOP sentences would not apply because Colorado's sentencing scheme does not mandate LWOP sentences for juvenile offenders. *See Miller*, 567 U.S. at 479. To the contrary, the sentencing statute mandates a sentence of life *with* the possibility of parole after forty years for each offense, and the district court said it was ordering those sentences to run consecutively at least in part as an exercise of its discretion. *See* § 18-1.3-401(4)(b)(I), C.R.S. 2020; *cf. Jones v. Mississippi*, 593 U.S.

12

98, 103 (2021) (holding that discretionary LWOP sentences are constitutional); *Lucero*, ¶ 18 (noting that *Graham* did not categorically ban LWOP sentences "where the sentencing authority considered an offender's youth and attendant circumstances").

¶ 24 Banks cites several cases from other jurisdictions that have held aggregate sentences to be unconstitutional because they were the functional equivalent of a LWOP sentence. Some of those cases involved non-homicide offenses. *See, e.g.*, *Budder v. Addison*, 851 F.3d 1047, 1059 (10th Cir. 2017); *Moore v. Biter*, 725 F.3d 1184, 1186, 1191-92 (9th Cir. 2013). Others simply required the exercise of discretion, without proscribing such sentences altogether. *See, e.g.*, *State v. Ramos*, 387 P.3d 650, 658 (Wash. 2017) (requiring *Miller* hearing but concluding that sentencing satisfied *Miller*); *State v. Zuber*, 152 A.3d 197, 201-02 (N.J. 2017). In any event, we are bound by Colorado Supreme Court precedent, which has "explicitly rejected this 'functional equivalent' argument." *Godinez*, ¶¶ 92, 97; *see also People v. Dunlap*, 975 P.2d 723, 748 (Colo. 1999) (noting that Colorado courts are "not bound by a federal circuit court's interpretation of federal constitutional requirements").

¶ 25    We agree that there has been "an unmistakable progression toward providing *more* protection for juvenile offenders facing a potential sentence of life behind bars with no realistic opportunity for release."  *Lucero*, ¶ 47 (Gabriel, J., concurring in the judgment). But a sentence of life in prison with the possibility of parole after forty years for first degree murder is constitutional.  *See People v. Tate*, 2015 CO 42, ¶ 50 (holding that sentence of life with the possibility of parole after forty years was "not only the appropriate sentence but also a constitutional one"), *overruled on other grounds by Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016); *Davis*, ¶ 64. It does not become unconstitutional because the defendant committed two murders and received two such sentences.  *See Lucero*, ¶¶ 19, 23 (holding that constitutionality of consecutive sentences depends on each individual crime and sentence imposed).

¶ 26    We therefore conclude that Banks's consecutive sentences of life with the possibility of parole after forty years for each of his two first degree murder convictions are constitutional.

## IV.    Disposition

¶ 27    The judgment is affirmed.

JUDGE DUNN and JUDGE BROWN concur.